## Isaac Greenwade *v.* Thomas Mills.

1. MALICIOUS PROSECUTION: WHAT CONSTITUTES IT.—Want of probable cause alone is not sufficient to maintain an action for a malicious prosecution; the plaintiff must also show that the prosecutor acted from malice; although the prosecutor had no probable cause to institute the prosecution, yet if he thought he had, he is not liable for an honest mistake of judgment. See 4 Burr. 1971; 3 Wash. C. C. R. 31; 1 T. R. 540; 6 D. & R. 8; 6 Bing. 186.

2. MALICIOUS PROSECUTION: MALICE: GIST OF.—That the prosecutor acted from malice, may be inferred by the jury from a want of probable cause, and the other circumstances of the case; but still malice, being the gist of the action, must be found to exist; it will be error, therefore, for the court to instruct the jury to find for the plaintiff, if they believe that the defendant had no probable cause to institute the prosecution.

3. SAME: PROBABLE CAUSE MADE QUESTION OF LAW AND FACT.—The question of probable cause is a mixed proposition of law and fact. Whether the circumstances alleged to constitute probable cause exist or not, is a question of fact for the jury; but whether, supposing them to be established, they amount to probable cause, is a question of law for the determination of the court. See 3 Wash. C. C. R. 31; 5 Bing. (N. C.) 722; 1 Wend. 345; 2 Brevard, 75.

4. SAME: DUTY OF COURT IN CHARGING JURY.—It will be error for the court, in a trial for a malicious prosecution, by its instructions, to refer the question of probable cause to be determined by the jury, without declaring to them the principles of law by which they ought to be governed in determining the question. If the evidence be doubtful or conflicting, the court should instruct the jury hypothetically with reference to the different views which they make of the evidence; but if there be no disputed question of fact, or no conflict of testimony, or no question of credit of witnesses, it is the duty of the court to instruct the jury whether the circumstances proven are, or are not sufficient to show probable cause. See 2 Wend. 424; 1 M'Mullen, 358; 1 Bibb, 369; 2 Yerg. 329; 1 Maine, R. 135; 3 Hawks, 135.

5. SAME: PROBABLE CAUSE.—B., whilst a minor, made a verbal gift of a slave to C., and delivered possession. C. afterwards sold to G., who retained possession for about five years; after B. arrived at majority, he affirmed the gift he had previously made of the slave; but some doubt arising as to the title, G. offered to give B. horses for the slave; B. afterwards, and whilst the slave was in possession of G., sold her to M., who thereupon came late at night to G.'s negro cabins, and clandestinely removed the slave during G.'s absence; and for this G. prosecuted him for stealing the slave. *Held,* that G. had probable cause to institute the prosecution.

6. INSTRUCTIONS.—It is error to charge the jury upon a fact hypothetically stated in the instruction, if there be no evidence before them tending to show its existence.

7. SLAVES: TITLE TO, MUST NOT BE LEFT TO JURY WITHOUT INSTRUCTIONS.—The question of title to a slave is a mixed question of law and fact, and should not be referred to the determination of the jury without instructions as to the principles of law applicable to the evidence.

IN error from the Circuit Court of Yazoo county. Hon. Robert C. Perry, judge.

The pleadings and evidence are sufficiently stated in the opinion of the court.

*Gibbs* and *Bowman*, for plaintiff in error.

*Freeman* and *Dixon*, for defendant in error.

HANDY, J., delivered the opinion of the court.

This was an action brought by the defendant in error for a malicious prosecution instituted against him by the plaintiff in error, in causing him to be arrested and imprisoned upon a charge of stealing a negro slave, the property of the plaintiff in error, of which charge he was acquitted.

On the trial in the court below, the plaintiff gave in evidence the affidavit of the defendant preferring the charge, the warrant of a justice of the peace issued against him thereon, and proved his arrest under the warrant, and his discharge by the justices before whom he was tried. He further proved that Greenwade knew of the possession of the slave in Leake county by the plaintiff, about a week previous to the arrest, and that Greenwade offered one John M. Burnett horses for the slave, before the arrest. He also read a bill of sale, dated in November, 1849, for the slave, from Burnett to the plaintiff, and also proved that, upon process issued by the governor of this State, upon a requisition of the governor of the State of Kentucky, for the arrest of the plaintiff, the defendant assisted an officer in pursuing the plaintiff with dogs.

On the part of the defendant, it was proved that the slave in question had been the property of John M. Burnett, who, while the slave was an infant, had made a verbal gift of her to one Mrs. Elliott, who took possession and held her for more than a year, and sold her to one Cain, by whom she was given to his daughter, the

VOL. II.—30

defendant's wife; that she remained in the possession of Green-wade from some time in the year 1844 until December, 1849, at which time the plaintiff came to the premises of the defendant late at night, or about daybreak, on horseback, and clandestinely took the slave from the defendant's negro cabins, and placing her behind him on his horse, rapidly fled, taking her away; that when Burnett made the gift to Mrs. Elliott, he was about sixteen years of age, but that he became of lawful age in July, 1847; and in January, 1848, that he ackowledged he had given the slave to Mrs. Elliott, and stated that he made no claim to her, and was willing to make a deed of gift, or a bill of sale to Mrs. Elliott, or to the defendant, if he knew to which of them to make it.

The plaintiff then introduced his father, who testified that the witness who had proved these statements of Burnett, was very old and infirm, and incapable of understanding business transactions. But her intelligence and character for veracity, and her capacity to understand such transactions were fully established by several witnesses of good character, who have known her for a great number of years, and who testify that she is not more than fifty years of age.

The verdict being for the plaintiff, the defendant moved for a new trial upon several grounds; which motion being overruled, exceptions were taken, upon which the case is brought here.

The first objection made, is to the instructions granted at the instance of the plaintiff.

The first of these instructions is, "that if the jury believe from the evidence, that defendant had arrested and imprisoned the plaintiff upon a charge of theft, and which was proved not to be true upon a trial before the Justices Court, then the law is for the plaintiff, and they must so find; provided there were not probable grounds for so doing upon the part of defendant."

This instruction is clearly erroneous. It makes the liability of the defendant, for the alleged grievance to the plaintiff, to depend solely upon whether or not there was probable ground for instituting the prosecution. But the settled rule upon the subject is, that the prosecution must have been instituted not only without probable cause, but also with malice, in order to render the prosecutor chargeable. *Farmer* v. *Darling*, 4 Burr. 1971; *Munns*

v. *Dupont*, 3 Wash. C. C. R. 31. If this was not so, every informer would be liable in damages in the event of an unsuccessful prosecution, however honestly he may have acted in endeavoring to bring a party whom he believed to be guilty, to punishment; and however well the apparent facts under which he acted may in themselves have justified the charge, if he committed an honest error in judgment, or if it turned out from evidence not known to him, that the accusation was without just foundation; and this would be productive of the great evil of deterring individuals from the hazard of attempting to bring criminals to punishment. But the rule is wisely settled, that such prosecutor will not be liable, unless the charge be shown to be wilfully false, as well as without probable cause. *Johnstone* v. *Sutton*, 1 T. R. 540; *Coken* v. *Morgan*, 6 D. & R. 8. It is true, that malice may be inferred by the jury from the circumstances, and from the want of probable cause. Still, it must be found to exist, and, in the language of Tindal, Chief Justice, "there ought to be enough in the circumstances to satisfy a reasonable man that the accuser had no ground for prosecuting but his desire to injure the accused." *Williams* v. *Taylor*, 6 Bing. 186. Indeed, malice is the very gist of the action; and it is manifest that there might be want of probable cause, and yet no malice.

But this instruction is erroneous in another respect. It leaves the question whether there was or was not probable cause, to be settled entirely by the jury, without any directions as to the principles of law arising from the evidence, by which they should be governed in determining the question. Since the leading case of *Johnstone* v. *Sutton*, it is universally agreed that the question of probable cause is a mixed proposition of law and fact; that whether the circumstances alleged to constitute probable cause are sufficiently established, is a matter of fact for the jury; but whether, supposing them to be true as alleged, they amount to a probable cause, is a question of law to be decided by the court. *Munns* v. *Dupont*, 3 Wash. C. C. R, 31; *Broad* v. *Ham*, 5 Bing. (N. C.) 722; *Pangburn* v. *Bull*, 1 Wend. 345; *Thomas* v. *Rouse*, 2 Brev. 75. If the evidence in relation to essential facts be doubtful, or the testimony conflicting, the court should instruct the jury with reference·

to the different views to be taken of the evidence, that if they believe certain facts from the evidence, there was not probable cause, and the plaintiff is entitled to recover; but that, if they take a different view of the facts and so find, they should find for the defendant. *Master* v. *Deyo*, 2 Wend. 424; *Paris* v. *Waddell*, 1 M'Mullan, 358; *White* v. *Fox*, 1 Bibb, 369; *Williams* v. *Norwood*, 2 Yerg. 329. If there is no disputed question of fact, no conflict of testimony, or no question of credit of witnesses, it is competent for the court and its duty, to instruct the jury whether the circumstances are or are not sufficient to show probable cause. But it is error for the court to refer the determination of the question of probable cause to the jury under any state of the case, without declaring to them the principles by which they must be governed in determining the question; because it would be leaving to the jury the determination of questions of law. *Ulmer* v. *Leland*, 1 Maine, R. 135; *Plummer* v. *Gheen*, 3 Hawks, 135.

The second instruction granted at the plaintiff's instance is, that "if the jury believe, from the evidence, that Greenwade knew that Mills had title to the slave at the time of the arrest, and if they further believe that Greenwade had no title to said slave, then they must find for Mills, and assess such damages as, in their opinion, the plaintiff ought to have."

This instruction is erroneous in two particulars. The first branch of it, in relation to the defendant's knowledge that the plaintiff had title to the slave, is not warranted by the evidence, and was calculated to mislead the jury. There was no evidence that Greenwade knew that Mills had any valid title to the slave. The jury might have believed that he set up a claim to her, and that he had a bill of sale from Burnett. But having a bill of sale and having the title are very different things. It is most probable that the jury considered that having a bill of sale was sufficient to show that the plaintiff had the title, and that the defendant's title, without a bill of sale or deed, amounted to nothing; for, upon no other view can the verdict be sustained, if the evidence in behalf of the defendant received full credit. That evidence, if credited, showed that Burnett had made a gift of the slave to Mrs. Elliott, several years before his bill of sale to the plaintiff; that the de-

Greenwade *v.* Mills.

fendant claimed under a purchase from Mrs. Elliott, made several years before the plaintiff's claim accrued, and during all that time, and until the slave was taken from him by the plaintiff, that he was in possession of the slave; that Burnett, though a minor when he originally made the gift, ratified it after he became of age, and a considerable time before he made the bill of sale to the plaintiff. The testimony showing these facts is unimpeached, except that of one witness, whose credit was attempted to be impeached; but her veracity and intelligence were amply sustained by respectable witnesses. It is clear, therefore, either that this part of the instruction was not warranted by the testimony, or that the verdict in reference to it is not supported by the evidence; and upon either of these grounds, the judgment would be reversed.

If the jury believed from the evidence that the defendant knew that the plaintiff *claimed* title to the slave, which is all that the evidence justified them in believing—and if they further believed that the defendant had no title to the slave, and that he charged the plaintiff with stealing the slave, it by no means followed that these facts entitled the plaintiff to recover. For though the defendant might not have had a good title, he may have believed that he had; and if, after the slave was taken clandestinely from his possession by the plaintiff, the defendant made the charge under the honest belief that she was his property, it is clear that there is an absence of that malice without which an action like this cannot be maintained.

But the latter branch of the instruction is clearly erroneous in referring the question whether the defendant had title to the slave, to the jury. If left to them to determine whether, under the facts shown in behalf of the plaintiff, and on the part of the defendant, the defendant had title,—this was submitting a question of law to the jury. It was the duty of the court to instruct the jury that if they believed, from the evidence, the particular facts relied on by the plaintiff to exist, then the title was in him; and to give a similar instruction with reference to the facts upon which the defendant's title rested. Thus the law, applicable to the question, would have been settled by the court, and the facts to which it might apply, submitted to the jury. But by this instruction the

entire question of title, both as to law and fact, was referred to the jury.

The only other objection to the judgment, which we deem it necessary to notice is, that the verdict is not supported by the evidence.

Upon the point of title to the slave, it appears that the slave was originally the property of Burnett, who gave her verbally to Mrs. Elliott, previous to the year, 1844, and delivered possession; that Mrs. Elliott sold her to Cain, the defendant's father-in-law, who gave her to the defendant's wife, and she remained in defendant's possession until December, 1849, when she was taken away in the night, clandestinely, by the plaintiff; that Burnett was a minor when he made the gift, but acknowledged it after he became of age, and before he made a bill of sale to the plaintiff; that in November, 1849, he made the bill of sale to the plaintiff, and that the defendant offered Burnett horses for the slave before the arrest of the plaintiff on the charge of larceny; but at what time or under what circumstances, it does not appear, and that the defendant knew that the plaintiff had possession of the slave, in Leake county, about a week previous to the arrest.

If these facts, showing the defendant's title, were true—and they appear to be amply sustained by the evidence—it is manifest that his title was good as against the claim of the plaintiff, as well as against Burnett; and that it was not affected by his offer to give Burnett horses for his title. If such an offer was ever made—and the proof of it is very indefinite, and made by the plaintiff's father alone—it most probably was done in order to obtain formal evidence of title from Burnett, or under the belief that a conveyance by deed was necessary to render his title good. At all events, this conduct could not divest his title, if the facts upon which it rests, as stated by the witnesses, really existed.

The title of the defendant appears, therefore, to be fully sustained by the evidence, and it is difficult to perceive how the jury could have found against it, unless they were misled by the first branch of the second instruction, or unless they misapprehended the force of that instruction.

With respect to the circumstances under which the slave was

taken by the plaintiff from the defendant's possession, the testimony would have well justified the defendant in believing that the taking was felonious; and it is without contradiction or explanation. The slave was taken clandestinely in the night, while the defendant was absent from home, and removed by a rapid flight from the defendant's possession. Nothing is shown by the record as to the grounds upon which the plaintiff was discharged by the justices upon the charge of larceny. But taking the evidence as it is presented in this record, there cannot be a doubt that the defendant had probable cause to believe that the slave was feloniously taken from his possession and carried away by the plaintiff. And the testimony upon this point is unimpeached so far as the record shows.

We think it clear, therefore, that the verdict is not warranted by the evidence.

The judgment is reversed, and the cause remanded for a new trial.