## H. M. THREEFOOT *v.* G. A. NUCKOLS.

1. ACTION FOR MALICIOUS PROSECUTION. *Defense. Guilt of plaintiff. Evidence.*
   In an action of malicious prosecution, the guilt of the plaintiff is a perfect defense, and this may be shown by any competent evidence, no matter when or how discovered.

2. SAME. *Probable cause. Malice.*
   In such case the fact that defendant began the prosecution without knowledge of sufficient facts to create probable cause is not enough to fix his liability. Want of probable cause and malice must both exist to warrant a recovery.

3. SAME. *Evidence. Subsequently discovered facts. Instruction.*
   Accordingly an instruction for plaintiff that in determining the question whether the prosecution was malicious and without probable cause, the jury should only consider the facts tending to show that the prosecution was justifiable, which were in the knowledge of defendant at the time the arrest was made, is erroneous, as excluding a consideration of subsequently discovered facts, which may affect the question of defendant's malice, or may tend to show plaintiff's guilt.

4. SAME. *Embezzlement. Instruction. Case in judgment.*
   In an action for malicious prosecution of plaintiff for embezzlement, he admitted that while in defendant's service he collected, among other sums, two warrants, which he kept and sent to his wife. He claimed to have been robbed of all his collections, but when pressed for a statement he concealed these facts, and, after their disclosure on the trial, claimed that defendant owed him, and that he kept the warrants in payment. The court refused the following instruction asked by defendant: "If plaintiff, without authority, sent the warrants to his wife, and then concealed from defendant that he had collected such warrants, he was guilty of embezzlement." *Held,* error. Though not precise, it should have been given, either as asked, or in some modified form.

FROM the circuit court of Lauderdale county.

HON. S. H. TERRAL, Judge.

Suit for damages for malicious prosecution. Appellee, Nuckols, was a travelling salesman in the employ of A. Threefoot, Sons & Co., wholesale merchants in Meridian, Miss. He was also authorized to collect for goods sold, and usually made remittances of moneys on hand, whenever he reached places from which this could conveniently be done. On one of his trips he visited several towns

on and near the New Orleans and Northeastern Railroad, and collected about four hundred dollars. Carrying this sum on his person, he came from some inland town to Vossburg, a railroad station, and after visiting customers there, and without making a remittance, proceeded on his journey to Paulding, a town off the railroad, distant about twelve miles from Vossburg. After spending some hours there, and making other small collections, he left about dark to return, travelling alone in a buggy.

While thus travelling, he claims to have been assaulted by two unknown men, and robbed of all his collections. His version of the occurrence, briefly stated, is that while he was traversing a secluded part of the road, in a place where the sand was very deep, two men suddenly approached him from behind, jerked him from his buggy, and struck him severely over the head with some hard substance, causing the blood to flow freely. While falling, he seized his pistol, which he carried upon the seat beside him, and tried to use it, but it snapped and would not fire. Thereupon the highwaymen fired at him twice, one bullet passing through his ear and the other through his coat, and being stopped by his pocket-book, which he carried in his breast pocket. After overpowering him, the men took his pocket-book, containing the money, and fled, and he walked back about a mile to the house of an acquaintance, aroused him, and told him of the occurrence. After a few minutes spent in examining and attending to his wounds, he returned with his acquaintance to the scene of the robbery. There they found the buggy caught against a tree, and further on they found the horse. They walked on a mile further to Vossburg, and had appellee's wounds dressed by a physician. Then, in company with a number of persons, they returned to the scene of the supposed robbery.

It was then discovered that the sand in the road showed no signs of any struggle, although it was pressed down at one place, as if by a man's hip. No tracks were found leading in the direction which Nuckols indicated as that taken by the robbers. A picket was found near the spot, and this, he claimed, was used by the robbers in inflicting the blows upon his head, and it was found that it had been torn from a picket fence inclosing a graveyard, which Nuckols

had passed, and upon closer examination it was seen that the buggy had been turned aside at a point in the road opposite the grave-yard, and stopped at a tree, which showed signs of having been rubbed against by the horse. Similar signs were discovered on a tree near the spot where the alleged robbery took place. The pocket-book was found the next morning in an old unused road-way, about seventy-five yards away, and the person who found it testified that there was a bullet-hole in its side, and the bullet, which was loosely imbedded in some papers, dropped out when the book was opened. The bullet was afterwards found to correspond in size with those in Nuckols' pistol.

In his testimony, Nuckols admitted having stopped and turned aside his buggy near the graveyard, but explained the necessity therefor. There was also some testimony that tracks of two men were seen apparently leading from the road in the direction of the fence where the picket was obtained. Tracks seemingly of two men, according to the testimony of some, were discovered leading from the scene of the supposed robbery to the old road, where the pocket-book was found.

Nuckols went the next day to Meridian, and was met by appel-lant, H. M. Threefoot, one of his employers, who heard from him an account of the accident, and insisted that physicians should be consulted. He was accordingly examined by two or three phy-sicians, selected by appellant, and they concurred in pronouncing his injuries slight, and in the opinion that the wound in the ear was not made by a pistol-shot, and they so testified. On the con-trary, the physician at Vossburg, who first examined Nuckols, tes-tified that he thought, from the appearances at that time, the wound was made by a bullet. Nuckols also claimed that the blows on the head caused intervals of deafness, but the physicians in Merid-ian, after examining him as to this, were of the opinion that his hearing was not impaired.

The appellant, Threefoot, after learning from the doctors the result of their examination, was led, as he testifies, to doubt Nuckols' story, and after receiving a communication from Voss-burg, which presumably confirmed him in his doubt, he laid the

matter before his attorney who advised him to go, in company with an assistant, to the place of the supposed robbery and investigate the matter more fully. This advice was acted upon, and appellant examined the scene and conferred with many persons who had seen Nuckols the night of the occurrence or the day following, and appellant testified that these, with one exception, expressed the opinion that Nuckols had not been robbed. Returning to Meridian, Threefoot, under the advice of his attorney, made an affidavit before a justice of the peace charging appellee with embezzlement. Nuckols was at once arrested and, after being detained several days in the custody of an officer, was released on bail, but as the grand jury was soon to assemble, the cause was continued by the justice of the peace to await the finding of an indictment. The grand jury examined into the affair, but failed to indict, and the justice of the peace dismissed the cause.

Subsequently certain facts came to the knowledge of appellant which were not known when the prosecution was begun. These related mainly to the retention by Nuckols of two pension warrants, each for about $40, collected by him on his trip, and sent by him to his wife in Alabama. He admitted the collection and appropriation of the warrants, but claimed that the firm owed him for services, and that he had the right to retain the warrants and account for them in his settlement. He also claimed to have had money of his own with him sufficient to replace the warrants, and that the warrants were used as the most convenient means of remitting money to his wife. But when questioned by Threefoot and pressed for a disclosure of all his collections, he had made no mention of the warrants. Nuckols testified that he afterwards sent the warrants to New Orleans by a railroad conductor to be cashed, but the evidence shows that they were paid at the subtreasury in that city some two months after the supposed robbery, and there is strong contradictory evidence to show that Nuckols was in New Orleans at the time they were cashed. There was also some evidence discovered by Threefoot after the prosecution which tended to contradict appellee as to the number of shots fired at the time of the alleged robbery.

Nuckols brought this suit for damages against the members of the firm of Threefoot, Sons & Co., and obtained a verdict and judgment for $2500. This was, upon motion, set aside as to all the defendants except H. M. Threefoot, and he has appealed.

*Fewell & Brahan,* for appellant.

It was error to give the 7th charge for the plaintiff. The whole case was involved in the existence or non-existence of malice and probable cause. Guilt of the plaintiff was a perfect defense. But this instruction told the jury that subsequently discovered facts could not be considered, even though it might afterwards have become apparent that Nuckols was guilty—as we contend it did. To permit a recovery under such proof would be to award a guilty plaintiff a large sum after he had already robbed defendant. If it ever transpires that a plaintiff is guilty, that is an end of the suit. A prosecutor can never be required to wait until he has evidence enough to convict. If so, men would never be convicted of crime.

On the undisputed facts in evidence the court should have found as a matter of law that probable cause existed. Whether the facts exist is a question for the jury. Their effect is for the court. *Greenwade* v. *Mills,* 31 Miss. 465; *Whitfield* v. *Westbrooks,* 40 Ib. 311.

The 9th instruction for defendant should have been given. The taking of the pension warrants and concealing the facts from Threefoot was embezzlement. The proof is overwhelming that the firm owed Nuckols nothing. Whether indebted or not, the conversion of the warrants was embezzlement. They were collected by virtue of his agency and converted to his own use and the facts concealed. This constitutes the crime. Code 1880, § 2782.

The one fact that appellant acted under the advice of counsel, who had fully and fairly investigated the facts, ought to justify defendant. Numerous authorities so hold, and this is the better view. Bigelow on Torts, § 83; Cooley on Torts, 183; 8 Cal. 217; 17 Ala. 27; 26 Ill. 259; 8 La. An. 12; 9 Ib. 219; 16 Ib. 357; 8 Mo. 339; 25 Pa. St. 275; 4 Wait's Ac. & Def. 354; *Stewart* v. *Sonneborn,* 98 U. S. 187.

*Cochran & Bozeman*, for appellee.

The question of malice is one for the jury, but they may always infer the malice requisite to a recovery from a want of probable cause. Malice is not necessarily a motive of revenge, or base or malignant passion. The word is to be taken in its broad legal sense. Any act wilfully and purposely done to the wrong of another is to be deemed malicious.

If it be true that the advice of counsel given after a full and fair disclosure of all the facts will protect, we contend it was properly left to the jury to determine whether such full and impartial disclosure had been made, and the finding of the jury will not be disturbed. It may still be true that the prosecutor did not in *good faith* act on the advice. In actions like this the good faith of the defendant is essentially a question for the jury. 112 Ill. 663; 57 Iowa, 107; 1 Hill on Torts, 503; 62 Ill. 107; 64 Mo.; 38 Ib. 13; 59 Ib. 557; 55 Barb. 194; 33 Pa. 501; 50 How. 105; 49 Ind. 156. Some courts hold that such advice is only a circumstance to be considered. 62 Tex. 411; 64 Ib. 322.

Facts not known to defendant when he procured plaintiff's arrest are not competent to show probable cause. This is a universal rule. 2 Greenl. Ev. § 404 (n. 1) *et seq.* Accordingly defendant could not legally justify his prosecution, because of the facts relative to the pension warrants.

The evidence plainly shows an effort by Threefoot to use criminal process to collect a debt. It is never necessary to prove want of probable cause or malice where there has been an abuse of legal process. *Ross* v. *Langworthy*, 14 N. W. Rep. 515; 64 Pa. 283; 90 Ib. 259; 103 Ib. 110; 8 Watts, 240.

Argued orally by *J. W. Fewell*, for appellant.

WOODS, C. J., delivered the opinion of the court.

The seventh instruction given by the court below for the plaintiff—appellee—is in these words: "The court instructs the jury for the plaintiff, that in determining the question whether the prosecution of the plaintiff by defendant was malicious and without

probable cause, they should only consider the facts and circumstances tending to show that the prosecution was justifiable, which were in the knowledge of defendant at the time the arrest was made," and the action of the court in giving this instruction is assigned for error.

It is to be noticed that the charge is not confined to the proposition that there could be no justification, although, on the whole case, as developed on the trial, probable cause was shown, if the prosecutor did not know the facts constituting probable cause when he began the prosecution. Even this proposition has been strenuously combated by eminent jurists, and its correctness is distinctly and ably denied by Ruffin, C. J., in the case of *Bell* v. *Pearcy*, 5 Iredell. Said that enlightened judge : " Another observation dropped from his Honor, which, as applicable to this case, we deem not entirely accurate, and therefore notice. It is the direction that upon the inquiry into probable cause, only such facts are to be considered as were known to the defendant when he instituted the prosecution. . . . . There is no doubt that a defendant in this action may allege that the plaintiff, though acquitted in the prosecution, was actually guilty, and that he may prove the guilt by any evidence in his power, though discovered after the prosecution began, or after it ended."

That the current of authority, however, supports the doctrine that the test of probable cause is the facts as they were known to the prosecutor at the time he began the prosecution, is not to be denied. The text-books and reports bear out, in the main, the contention that *probable cause* may not be evidenced by facts ascertained by the prosecutor subsequent to the commencement of the prosecution. For all the purposes of this case, this proposition may be fully admitted. But its admission does not settle the exception taken by appellant to this 7th instruction. This 7th instruction goes far beyond the rule which we have adverted to. It not only shuts off from the consideration of the jury the subsequently acquired facts, as they might have been supposed to affect the question of probable cause, but it likewise excluded all subsequently acquired facts as they might be supposed to affect the question of

malice; and, furthermore, it put out of the jury's view these subsequently discovered facts as they affected the question of the plaintiff's guilt of the criminal charge made against him. Surely no reason can be assigned, nor any respectable authority produced to justify the shocking proposition that the guilt of the plaintiff in a suit for malicious prosecution may not be shown in any manner and by any proofs, no matter where or when or how acquired. Reason and conscience revolt at the bare thought of a proven criminal recovering damages against the prosecutor, even though the prosecutor's motives were bad, and his knowledge of the facts establishing the guilt of the accused was defective.

The want of probable cause *and* malice must conjoin to warrant a recovery in cases of this character, and no man is to be punished by an adverse judgment in a suit for malicious prosecution, because when he began the criminal prosecution he had not in his possession facts sufficient to create probable cause. There must not only be a want of knowledge of such facts, but there must be a malicious intent conjoined thereto, and the guilt of the accused must in every case be a perfect defense. As was said in *Johnson* v. *Chambers*, 10 Iredell : " The defendant is only to be fixed with a want of probable cause by what he knows when he commences the prosecution, although he is allowed to protect himself by any facts which he is able afterwards to prove, which show the plaintiff to be guilty, or which tend to show it." This protection of the defendant below was virtually withdrawn from the jury by the instruction we are considering. In every conceivable case where justice is administered under the forms of law, it must be true that if the plaintiff in a suit for malicious prosecution was in fact guilty as charged, he can have no right of action against his prosecutor, no matter what the motive of the prosecutor, and no matter when the facts establishing plaintiff's guilt were discovered. The guilt of the accused must always be a perfect defense, and this defense may be made out by any facts, no matter when the knowledge of them was acquired. 5 and 10 Iredell, in cases cited *supra ;* 6 Rhode Island, 37 ; 3 Blackford, 241 ; 49 Indiana, 156.

It is also assigned for error that the court improperly refused the

ninth instruction asked by the defendant. This instruction declares : "If Nuckols, without authority, sent the pension warrants to his wife, and then concealed from Threefoot that he had collected such warrants, he was guilty of embezzlement." The evidence in the case, even the admitted facts in the case, we are strongly inclined to believe, abundantly warranted this charge. The testimony of Nuckols himself admits the collection of the warrants, the appropriation by himself of them in sending them to his wife, and his concealment, or failure to disclose these facts, though pressed by Threefoot for a full disclosure of all his collections, and this alone went far to establish the charge of embezzlement. We do not forget that Nuckols attempted to justify his conduct in this particular matter, by declaring that his employer owed him, and that he had a right to pay himself in this way. But this attempted justification is no justification. If Nuckols had been a stranger to Threefoot, and not in his employment, and had, without authority, taken Threefoot's money to pay a debt due him, he would have been guilty of larceny. Being Threefoot's employé, the transaction, in its legal aspects, is governed by the same principles, and, in the absence of other evidence, Nuckols was guilty of embezzlement. There is an end to the reign of law, when men are allowed to seize and appropriate to their own uses the money of another, even though that other be a delinquent debtor.

Though Threefoot was in ignorance of the collection of the warrants and of Nuckols' appropriation of them when he began criminal proceedings, his right to make this proof was conceded by the court below in admitting the evidence on this point on the trial, and the defendant had a right to have the jury properly instructed on this branch of the case. The instruction would be more satisfactory to us if it were fuller and more precise, yet, as it is, it was substantially correct, and the court should have given it, either as asked, or in some modified form, to the end that the mind of the jury might have been directed to the consideration of the facts establishing the plaintiff's guilt.

For these reasons, the judgment must be reversed, but we can-

not content ourselves in the discharge of our duty by a simple reversal.

While in trials of this character it is to be borne in mind that criminal prosecutions are not inconsiderately and without reason or probable cause, to be permitted by the courts, yet it is none the less important to be borne in mind that a prosecution set on foot by one citizen against another, for a wrong that affects the public, is regarded with more favor than a prosecution involving civil rights between private persons, and that, on considerations of policy and convenience and necessity, the prosecutor of a crime against the public shall have protection from legal condemnation if he had probable cause, even though private motives and personal malice were present with the prosecutor.

Whatever Threefoot's motive in beginning this prosecution, the whole evidence taken together manifestly fails to show that he had not probable cause. The verdict was against the overwhelming preponderance of the evidence as it touched the question of probable cause. Indeed, we do not hesitate to declare that in our opinion the facts disclosed in the record before us go far beyond demonstrating probable cause. In the face of the evidence, the verdict was palpably and grossly erroneous, and should have been unhesitatingly set aside.

If this verdict and judgment are permitted by us to stand, only the most irresponsible and foolhardy will ever dare again to put on foot prosecutions against offenders, even where the proof in their possession may be so great as to generate full belief of guilt. May that day never come, for now, even with the aid and assistance of good citizens who are willing to join the state in its attempts to enforce the criminal law and punish offenders, it cannot be denied that the ends of public justice are not always attained, and that many a criminal goes unpunished.

*Reversed and remanded.*