STATE LIFE INS. CO. OF INDIANAPOLIS, IND. *et al. v.* HARDY.

(In Banc. April 29, 1940.)

[195 So. 708. No. 33941.]

**John F. Frierson**, of Columbus, for appellant, State Life Insurance Company of Indianapolis, Indiana.

**C. A. Bratton,** of Oxford, for appellant, D. A. Pritchard.

**Creekmore, Creekmore & Capers,** and **L. A. Wyatt,** all of Jackson, and **Kermit R. Cofer,** of Water Valley, for appellee.

Argued orally by **John F. Frierson, C. A. Bratton,** and **Robert L. Smallwood, Jr.,** for appellants, and by **H. H. Creekmore,** and **Wade H. Creekmore,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an action for malicious prosecution. The prosecution was instituted by D. A. Pritchard, an agent for the State Life Insurance Company, with limited authority, as an incident to an attempt by Pritchard to collect a debt due by the appellee's deceased husband to the in-

surance company. Pritchard and the insurance company were defendants to the action, and both separately requested, but were refused, a directed verdict.

The material facts, in substance, are: the insurance company owned a plantation in Lafayette County, which W. H. Hardy, the appellee's deceased husband, had verbally leased annually for several years. A promissory note was given by him for the rent for 1937, fixing it at $1780, due October 1, 1937, and reciting: ''For the faithful performance by me of all the conditions named in this note, I hereby convey a lien on all crops produced on said land, . . .''

The insurance company admits that $280 of this $1780 was not for rent for 1937, but was due the insurance company by Hardy in 1936. Cotton was the main crop raised by Hardy on this plantation. He was accustomed, with the knowledge of, and without objection by, the insurance company, to remove this cotton from the plantation and after having it ginned and baled to store it in a warehouse, generally in Grenada County. He would then either sell the cotton and pay the rent with the proceeds, or deliver warehouse receipts to the company in settlement thereof. He had thirty-six bales of cotton in a Grenada County warehouse when he died on October 14, 1937. A few days after his death, an agent of the insurance company called on the appellee for the purpose of collecting the rent due the company by Hardy. She delivered the warehouse receipts to this agent so that he might sell the cotton and apply the proceeds thereof to this rent. There is an agreement in the record that this cotton was sold for $1,627.38, but the parties seem to have proceeded on the theory that it sold for $1,621.36. The insurance company had advanced the appellee, after her husband's death, $100, which, added to the $1500 rent for 1937, makes $1600, so that the proceeds of the thirty-six bales of cotton were either $27.38 or $21.36 in excess of the aggregate of these two items.

The appellee claimed this excess but an agent of the company advised her that the amount due the company by her husband was $1780, plus the $100 advanced to her, leaving a balance due over the proceeds of the cotton of $258.64. There is no evidence that the note executed by her husband was ever seen by the appellee and she acted throughout on information from her husband that the rent on the plantation for 1937 was $1500. When the appellee was advised that $280 of the $1780 claimed by the insurance company was for the balance due the company by her husband in 1936, she challenged the correctness thereof, and also stated that there could be no landlord's lien on the crop of 1937 for a debt due in 1936. The company's agent requested the appellee (and one of his letters in evidence states that she agreed) to sell enough of the agricultural products remaining on the premises to pay this balance of $258.64 or to send him warehouse receipts for cotton sufficient for that purpose.

Hardy's lease and right to the possession of the plantation expired on December 31, 1937, and it had been leased by the company to Pritchard for the year 1938. In December 1937, while this controversy was pending, the appellee ginned and baled five bales of cotton which she stored in her garage at her residence in Water Valley, Yalobusha County.

On December 16, 1937, Avant, an agent of the insurance company, wrote Pritchard, enclosing Hardy's note to the company, stating that there was a balance of $258.64 due thereon to which he might add his collection charge, requested him to collect the note ''and if necessary employ an attorney or any other assistance you need in collection of the balance of the rent.''

On December 20th, Pritchard called on the appellee at Water Valley, accompanied by J. R. Bennett, a mutual friend, and demanded payment of the balance due on the note, without exhibiting it to her;—at least there is no evidence that he did so. She told him that the rent on the plantation was only $1500, which had been paid, and

that she did not understand what the $280 was for. She then agreed not to remove any agricultural product from the plantation for ten days, so that Pritchard could "phone Avant in Alabama" and she could "write the State Life Insurance Company a letter and find out what the two hundred and eighty dollars was for." The appellee immediately wrote a letter to Turner, an agent of the company who was Avant's superior, which fully sets forth her attitude in the matter and which the reporter will set out in full.[1] After the expiration of this ten days,

---

[1]"Water Valley, Miss.

"December 20, 1937.

"Mr. F. E. Turner, Jr.,
"Indianapolis, Indiana.
"Dear Mr. Turner:

"This letter is not in answer to your letter of the 13th. I will answer you on that letter within the next few days. I am writing this pertaining to the balance of last year's rent which Mr. Hardy failed to pay. Today Mr. Avant of Thompson, Alabama had Mr. Pritchard of Oxford, Miss., come down here to collect this outstanding indebtedness. He wants to attach the balance of this year's crop for this debt. As you know Mr. Turner this cannot be done. This year's crop cannot be attached for last year's rental note. When Mr. Avant came here to collect this year's rent, he told me that he was only here to collect the fifteen hundred dollars for nineteen and thirty seven. You no doubt recall telling me yourself that the two hundred and eighty dollars was a back indebtedness. Now, Mr. Turner, I am being greatly handicapped towards moving my crops, as I have only a short time to dispose of them. Only this morning Mr. Pritchard went to the farms and stopped my wagons from hauling the crops which I had sold, before coming to me and informing me in any regard as to wanting to collect the nineteen and thirty-six rent that is a balance on your books. Last week this same Mr. Pritchard stopped, without authority, men whom I had clearing land as per the agreement the company had with Mr. Hardy. He is intimidating me in every way possible. If I can't fill the orders which are outstanding now, there are other farmers around here who will sell to my buyers, thereby causing me to lose the sales. As you know it is a miracle to even sell anything now under the present conditions of over-production. I have wanted and still want to have a satisfactory settlement all the way around and not have to throw this small transaction into Court. But it looks like I am being forced to do so. I wrote Mr. Avant on December fourteenth, and released the cotton which was be-

according to the appellee, but one or two days prior thereto as other evidence indicates, the appellee began moving products other than cotton to Water Valley where she lived. When she moved the five bales of cotton, whether before or after the 20th of December, is not clear from the evidence.

The appellee received no reply from Turner to her letter until after the prosecution against her was begun, and it was not put in evidence. On December 30, 1937, Avant wrote the appellee explaining that the $280 in dispute was a debt carried over from 1936. This letter was received by the appellee on the morning of January 1, 1938. On that day, Pritchard instituted a proceeding in the court of a justice of the peace to enforce the insurance company's claimed lien for rent on the agricultural products produced by Hardy on the leased premises, and also made an affidavit against the appellee before a justice of the peace in Lafayette County alleging that she had "removed 5 bales of cotton produced on the lands of said Ins. Co. on which there was a landlord's lien for $258.64 for rent and supplies due and arrears for the year 1937" on which she was tried and acquitted. This action for malicious prosecution was then begun.

Should the court below have granted Pritchard's request for a directed verdict? If so, it follows that the

---

ing held in the Grenada, Mississippi Compress, to cover this year's rental note of fifteen hundred dollars, also one hundred dollars which he advanced me. Making a total of sixteen hundred dollars. The cotton came to sixteen hundred and twenty one dollars and thirty-six cents, making according to my figures a balance due me of twenty-one dollars and thirty-six cents. Won't you please give me an immediate answer to this letter as Mr. Pritchard has agreed to hold up the attachments until I hear from you. And I have agreed not to move anything until we can see if there is a way out for both parties concerned. I hope it wont be necessary to take this small matter to law.

"Awaiting your reply,

"Respectfully,
"Frances Hardy."

insurance company's similar request should also have been granted.

Pritchard's request for a directed verdict should have been granted if, on the evidence, the court could peremptorily say that: (1) the appellee was guilty of the crime for which she was prosecuted; or (2) That Pritchard instituted the prosecution without malice and with probable cause therefor. 3 Rest. Torts, Secs. 653-657; Threefoot v. Nuckols, 68 Miss. 116, 8 So. 335; Greenwade v. Mills, 31 Miss. 464; Berry v. Priddy, 126 Miss. 125, 88 So. 517.

The burden of proving the appellee's guilt of the crime for which she was charged was on the appellants; 3 Rest. Torts, Sec. 657, Comment b. The appellee's acquittal, when tried on the affidavit made against her by Pritchard, is prima facie evidence that the prosecution was instituted with malice and without probable cause. Whitfield v. Westbrook, 40 Miss. 311.

The appellants make no contention that the evidence discloses that Mrs. Hardy was guilty of the crime for which she was prosecuted, but, as two of our associates base their opinion on the theory that she was guilty thereof, we will consider that question.

The two sections of the Code, which the reporter will set out in full,[2] that are here pertinent, are 1019 and 1020.

[2]"1019. *Larceny—removing property subject to certain liens from premises.*—Any person who, with notice of an employer's, employee's, laborer's, cropper's, part-owner's, or landlord's lien on any agricultural products, and with intent to defeat or impair the lien shall remove from the premises on which it was produced, or shall conceal, or aid or assist to remove or conceal, anything subject to such lien, and upon which any other person shall have such lien, without the consent of such person, shall, upon conviction, be punished by a fine of not more than five hundred dollars, and by imprisonment in the county jail not more than six months, or by either."

"1020. *Larceny—removing property subject to lien out of the county—selling.*—Any person who shall remove, or cause to be removed, or aid or assist in removing from the county in which it may be, any personal property which may be the subject of a pledge, mortgage, deed of trust, lien of a lessor of lands, or lien by judgment,

An examination of the affidavit on which Mrs. Hardy was prosecuted, hereinbefore set forth, will disclose that it does not charge a crime under either of these sections of the Code, but that fact does not relieve Pritchard of liability for the affidavit. "It served as the basis of a warrant for the arrest of the party charged, and the sting of malice and falsehood is just as hurtful when inflicted through the medium of an affidavit legally insufficient, as if it was drawn with technical precision." Mask v. Rawls, 57 Miss. 270; 38 C. J. 389.

Pritchard testified that his purpose in prosecuting the appellee was "to keep her from removing the rest of it", i. e., the agricultural products, evidently as an aid to him in collecting the debt due by Mrs. Hardy's husband to the insurance company for rent. The term "malice", in the law of malicious prosecution, is used in an artificial and legal sense, and simply means that the prosecution was instituted "primarily because of a purpose other than that of bringing an offender to justice"; 3 Rest. Torts, Page 380, and Sec. 653; and instituting a prosecution for the purpose of aiding in the collection of a debt is for an improper purpose and therefore malicious. Odom v. Tally, 160 Miss. 797, 134 So. 163; Grenada Coca Cola Company v. Davis, 168 Miss. 826, 151 So. 743; and in O'Bryant v. Coleman, 169 Miss. 776, 152 So. 59, 154 So. 259; 3 Rest. Torts, Sec. 668, Comment g.

In order to have probable cause for the institution of a criminal prosecution, the prosecutor must not only "reasonably believe that the person accused has acted

---

or any other lien of which such party has notice, without the consent of the holder of such encumbrance or lien, or who shall conceal or secrete such property, or who shall sell or dispose of the same or any part thereof without the consent of the mortgagee or beneficiary, whether any of these acts shall be done before or after the maturity of the debt secured by the lien, and shall not immediately discharge such encumbrance or lien or pay to the holder of such lien or encumbrance the value of such property in event same is less than the amount of such lien or encumbrance, shall, upon conviction, be imprisoned in the county jail not more than one year, or be fined not exceeding the value of such property, or both."

or failed to act in a particular manner," but must also "*correctly* believe that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused." (Italics supplied.) 3 Rest. Torts, Sec. 662. "Hence, if the facts charged do not amount to a criminal offense, the party making the charge is not protected by proving the truth thereof", 38 C. J. 410; Smith v. Deaver, 49 N. C. 513; nor, by proving that he believed that the facts charged constituted a criminal offense.

But, it is said, not by counsel for the appellants but by our dissenting associates, that the affidavits could have been amended at the trial before the justice of the peace so as to allege facts constituting a crime under either Section 1019 or Section 1020 of the Code. This is true. In fact, a new affidavit could have been then filed charging the commission of any statutory or common-law misdemeanor, and the trial proceeded thereon. But, this was not done. The affidavit cannot of course be now amended, and Pritchard should not be permitted to say that he would have amended it by alleging facts constituting a crime. Moreover, the amendment or new affidavit must have been verified by Pritchard's oath, and nowhere in the evidence does he attempt to say in what respect he would have amended the affidavit. And, neither her counsel nor his make any reference thereto. Should the liability of a defendant in a case of malicious prosecution be permitted to rest, not on the truth vel non of the facts alleged by him as the basis for the prosecution of the plaintiff, but on facts not alleged but which he says he could have alleged and proven, the plaintiff would be at the mercy of an unscrupulous defendant.

But, if we should be mistaken in this and our associates be right in saying that the affidavit can be now treated as if it had been amended so as to charge a crime under Sections 1019 or 1020 of the Code, the result here would be the same. The gist of the offense, defined by Section 1019, is an "intent to defeat or impair" the landlord's

lien; and, on the evidence, it is clear that the appellee did not act with any such intent. She did not know of the conventional lien set forth in the note which Hardy, her husband, had given the insurance company, and acted on knowledge of the fact that the rent for 1937 had been paid, and that the balance due on her husband's note was for a debt due by him to the insurance company in 1936 for which there was no statutory landlord's lien. Lumbley v. Gilruth, 65 Miss. 23, 3 So. 77. Consequently, there could have been no intention by her "to defeat or impair" a landlord's lien. Dolph v. State, 111 Miss. 668, 71 So. 911.

The crime defined by Section 1020 of the Code is committed only when the person, who removes property on which there is a lien from the county in which it may be, has notice of the lien and removes the property without the consent of the holder of the lien. As hereinbefore stated, the statutory landlord's lien on this cotton had been discharged and the appellee had no notice of the conventional lien set forth in the note given by Hardy to the insurance company. Moreover, it is clear from the evidence that Hardy had been accustomed, without objection from the insurance company, to remove the cotton raised by him on the plantation, and to store it in a warehouse in a different county before paying the rent due by him, and further that that company expected, and one of its agents had requested, the appellee to send it warehouse receipts for sufficient cotton to pay the balance claimed by it on Hardy's debt, which she could only do by removing the property from the premises to a warehouse. Should we be mistaken in saying that the evidence clearly discloses all of this, the jury had the right to find that it does so disclose.

But, it is said that Pritchard acted on the advice of an attorney at law, and therefore with probable cause. The trouble with this defense is that Pritchard did not make a full disclosure to the attorney of the facts bearing hereon within his knowledge or information. Practically all he did was to show the attorney the note given the in-

surance company by Hardy, advise him of the balance due thereon, and of Mrs. Hardy's removal of agricultural products from the premises before the expiration of the ten days within which she had agreed not so to do. He did not advise this attorney that Mrs. Hardy knew nothing of the conventional lien set forth in her husband's note, and was acting on the theory that since the rent for 1937 had been paid, there was no landlord's lien on the agricultural products.

The insurance company's request for a directed verdict should have been granted, for Pritchard was acting without the scope of his employment by it in prosecuting the appellee. He was employed only to collect the balance due the company on Hardy's note, and if necessary to enforce the lien claimed by the company on the agricultural products produced by Hardy on the leased premises. A criminal prosecution is not an appropriate means for the accomplishment of this purpose, and authority to institute such cannot be inferred therefrom. Russell v. Palatine Ins. Co., 106 Miss. 290, 63 So. 644, 51 L. R. A., (N. S.), 471. See also Fisher v. Westmoreland, 101 Miss. 180, 57 So. 563, Ann. Cas. 1914B, 636; Young v. L. B. Price Mercantile Co., 167 Miss. 409, 148 So. 643.

The jury assessed the appellee's damages at $8,000 which, the appellants say, was excessive. The only special damage suffered by the appellee, set forth in her declaration,—was the expenditure by her of $100 in defending the prosecution instituted against her by Pritchard, and she offered no evidence of other special damage, or as to the extent, if any, to which her reputation had suffered by reason of the prosecution against her.

Without proof of special damages, a plaintiff, in a malicious prosecution case, may recover ''damages for (a) the harm to his reputation which normally results from such an accusation as that brought against him, and (b) the distress which normally results from the initiation of such proceedings.'' 4 Rest. Torts, Sec. 670. An instruction granted the appellee in the court below

permitted the jury to award her punitive damages. This instruction is not complained of by the appellants and was evidently acted upon by the jury. The verdict rendered is against both Pritchard and the State Life Insurance Company; it exceeds the value of all the property that Pritchard is shown to possess and was rendered probably on the theory that its burden would fall upon the insurance company. This being true, the appellee's damages should be assessed again by a jury called to impose them on Pritchard alone. Justice here so requires. 15 Am. Jur. Damages, Sec. 294.

The judgment of the court below will be reversed and the action dismissed as to the State Life Insurance Company, but will be affirmed on liability as to Pritchard, and reversed in so far only as it assessed the appellee's damages and remanded for trial on that issue alone.

So ordered.

**Anderson, J.,** delivered a dissenting opinion.

In an action of malicious prosecution the guilt of the plaintiff of the crime charged against him as defendant in the criminal prosecution is a perfect defense to such malicious prosecution, and the guilt may be shown by competent evidence no matter when or how discovered. Threefoot v. Nuckols, 68 Miss. 116, 8 So. 335. Applying that principle to this case leads unavoidably to the conclusion that Pritchard was entitled to a directed verdict.

Mrs. Hardy's husband was in default for the 1937 rent in the sum of $280. That amount added to the agreed rent for 1937 made $1780, for the payment of which he gave his note due on October 1, 1937. The note contained this provision: ''For the faithful performance by me of all the conditions named in this note, I hereby convey a lien on all crops produced on said land, and also waive any and all exemptions allowed to me by the Constitution and Laws of the State of Mississippi as against the payee or assignee of this note, in regard to the collec-

tion thereof, and agree to pay reasonable attorney's fee in case suit is brought to enforce the collection thereof.''

The Insurance Company therefore had a lien on the crops produced on the place during 1937 for the payment of the $1780. It is wholly immaterial whether it was a statutory landlord's lien or a conventional lien. Mrs. Hardy removed some of the crops from the farm into another county in violation of her agreement not to do so. Such removal resulted in the criminal prosecution begun by Pritchard. At the time of the removal there was something over $200 in arrears for the rent. After the removal she not only failed to discharge the lien by paying the balance, but refused to do so. There was no conflict whatever in the evidence as to those facts. Mrs. Hardy's only attempt to justify the removal was that there was no lien on the crops for the $280.

Section 1020 of the Code of 1930 provides, among other things, that any person who shall remove or cause to be removed or aid or assist in the removing, from the county where located, any personal property ''subject of a pledge, mortgage, deed of trust, lien of a lessor of lands, or lien by judgment, or any other lien of which such party has notice, without the consent of the holder of such encumbrance or lien'', and ''shall not immediately discharge such encumbrance or lien or pay to the holder of such lien or encumbrance the value of such property in event same is less than the amount of such lien or encumbrance'', shall, upon conviction, be punished by fine or imprisonment, or both. The affidavit by Pritchard charging the crime is in this language: ''Before me, a Justice of the Peace in and for the State and County aforesaid and in Beat No. 1 of said County, came D. A. Pritchard who on information makes oath that on or about the 30th day of December, 1937, in said State and County, and in the Justice District No. 4 aforesaid Mrs. W. M. Hardy the tenant of the State Life Ins. Co. Inc. removed 5 bales of cotton produced on the lands of said Ins. Co. on which there was a landlord's lien for $258.64

for rent and supplies due and arrears for the year 1937 against the peace and dignity of the State of Mississippi."

It is manifest that Pritchard made an attempt to charge a crime under this statute and failed to do so for reasons at once apparent. Is it the law that a defendant in a criminal prosecution who has been acquitted, although the evidence shows beyond a reasonable doubt that he was guilty, is entitled to maintain an action for malicious prosecution against the instigator of the criminal prosecution based on such acquittal? Surely not. In such a case the instigator not only has probable cause to base it on, but he is absolutely justified both in law and morals. The fact that through inadvertence or mistake the affidavit failed to meet the requirements of the statute has nothing to do with the question. The affidavit was amendable. "It is very generally held that an acquittal is not evidence of malice and that malice cannot be infered from a discharge on nolle prosequi, or for want of jurisdiction of the magistrate before whom the complaint was made, or on the ground that the complaint stated no offense." 38 C. J. 427.

My opinion is that both the Insurance Company and Pritchard were entitled to a directed verdict; Pritchard on the grounds stated above, and the Insurance Company on those grounds as well as the ones stated in the majority opinion. However, since there is not to be a dismissal as to Pritchard, I concur with the majority opinion that the judgment against him should be reversed and remanded for a new assessment on the issue of damages.

**Griffith, J.,** concurs in the foregoing opinion.