PULLIAM *v.* OTT

No. 42588          February 25, 1963          150 So. 2d 143

*C. R. Bolton,* Tupelo, for appellant.

*Burgin & Gholson,* Columbus, for appellee.

RODGERS, J.

This is a damage suit for an alleged malicious prosecution. Appellee's father, W. D. Ott, purchased a forty acre tract of land in Monroe County, at a commissioner's sale. Thereafter, Asa Watson, Jr., transferred to appellant a 17.76 acre tract of land which was located between the land purchased by appellee's father and the public highway. There is a thirty foot strip of land running east and west across the northwest corner on the north side of the tract purchased by appellant from Watson and connects appellant's land with the Illinois Central Railroad right-of-way. Before the foregoing transactions, there had been a public road running east and west across the north side of the land sold by Watson to appellant, but on June 10, 1955, the thirty

foot strip was abandoned as a public roadway by order of the Board of Supervisors of Monroe County. Appellee's father purchased this strip of land from the owner in reversion, Mrs. Ethel Smith Watson. This deed was recorded in the Land Records of Monroe County, Mississippi, on June 17, 1955.

The seventeen acre tract was enclosed by a fence and included the old road and on the north side adjacent to the lands of appellee's father, there was a fence gap through which appellant entered the seventeen acre tract. Appellant used his lands to graze cattle and since the cattle gap was adjacent to the I. C. R. R. right-of-way, appellant was concerned and anxious to keep this gap closed so as to prevent his cattle from going on the railroad right-of-way.

In the summer of 1955, W. D. Ott cut hay on the forty acre tract purchased at the commissioner's sale. He hauled the hay through the fence gap and appellant claimed he left the gap down. Appellant complained to complainant's father, and had an altercation or controversy with W. D. Ott and the brothers of appellee about leaving the gap open. Appellant went to his attorney and the county attorney and asked for a consultation with them, and he made an affidavit against appellee for trespass on the seventeen acre tract of land. At the time the affidavit was filed, appellant told the justice of the peace that he did not want to do anything to the boy but he wanted to stop him from leaving "his gap" down. The affidavit was filed, a warrant was issued, appellee was arrested and gave an appearance bond. The constable, however, advised appellee not to come to court until he was notified.

Appellant made ten additional affidavits charging appellee with trespass, and appellee was again arrested and gave bond after each arrest. Appellant alleges that there was an agreement to keep the gap up until title to the thirty foot strip was settled in the chancery court.

W. D. Ott filed an action in the chancery court to establish his title to the old road right-of-way, and this action resulted in a decree confirming his title and enjoining the appellant and Asa Watson, Jr. from molesting W. D. Ott in the use of his property.

Appellee was a minor during the time he was being prosecuted by appellant for trespassing. He became sui juris in 1958 and filed his declaration against appellant on February 9, 1959. The case was continued from time to time and finally tried in October 1961, six years after the alleged malicious prosecution. One of the defendants, Asa Watson, Jr., was granted a directed verdict releasing him from the suit. There is no cross-appeal by plaintiff, James Pat Ott, complaining of this order of the trial court. The jury returned a verdict in favor of appellee against Wheeler W. Pulliam in the sum of $5,000.

Appellant complains on appeal that the trial court committed reversible error in granting eight instructions for plaintiff; that the circuit judge should have granted a peremptory instruction for the defendant; that the motion for a new trial was improperly overruled because the verdict of the jury was contrary to the great weight of the evidence and the verdict was excessive, and, finally, appellant complains that the admission in evidence during the trial of certain affidavits made by him against other members of the Ott family was prejudicial and is reversible error.

The first two instructions complained of are in the following language: Number One: ''The court instructs the jury for the plaintiff that if you believe from the proponderance of the evidence; first, that the prosecution complained of was commenced by defendant through malice; second, that it was without probable cause; and, third, that the prosecution terminated in the plaintiff's favor before the commencement of this suit, then you should find for the plaintiff and fix his damage.'' Num-

ber Two: "The court instructs the jury for the plaintiff that in this case, the prosecutions complained of were all terminated in favor of the plaintiff; and that therefore, if you believe from the preponderance of the evidence, that they were begun by the defendant, with malice and without probable cause, then you should find for the plaintiff and fix the amount of his damages."

It is argued by appellant that plaintiff's Instruction No. 1, above, leaves to the jury the determination of the meaning of "probable cause." In support of this thesis appellant cites Whitfield v. Westbrook, 40 Miss. 311. Appellant contends that plaintiff's Instruction No. 2 is a restatement of his first instruction, and that none of the instructions given the jury any measure or standard as to what is "probable cause." In the case of Whitfield v. Westbrook, supra, this Court said, in quoting from the case of Greenwade v. Mills, 31 Miss. 464, that "It is held in this case 'that it is error to refer the determination of the question of probable cause to the jury, under any state of case, without declaring to them the principles by which they must be governed in determining the question.' The authorities for this proposition are cited, and the duty of the court in instructing the jury on this point is clearly indicated."

The second instruction above-mentioned points out that the various prosecutions were terminated in favor of appellee, but again it stated "if they were begun by the defendant with malice, and without probable cause", the jury should find for the plaintiff.

(Hn 1) It is a general rule in civil cases that the plaintiff has the duty to ask the court to inform the jury what is necessary to make out the case as charged in the declaration. Moreover, there is no obligation on the part of defendant to request instructions setting out plaintiff's case. McDonough Motor Express, Inc. v. Spiers, 176 So. 723 (Miss.). (Hn 2) This Court has previously pointed out that where the facts (admitted, un-

disputed or clearly establish and all inferences to be drawn therefrom) are not sufficient to prove a want or probable cause, the trial judge should, on proper application, instruct the jury to find for defendant. Vicksburg S. & P. R. Company v. Porterfield, 103 Miss. 585, 60 So. 652. On the other hand, where the facts show that there was no probable cause for the prosecution, a peremptory instruction should have been given plaintiff. Harville v. Tabor, 240 Miss. 750, 128 So. 2d 863. (Hn 3) It is also the rule that where the facts on which the question of probable cause depends are rendered doubtful by the evidence, it is the duty of plaintiff to present instructions for the jury on the facts and inferences which the evidence tends to prove to establish his claim of malicious prosecution. In so doing, plaintiff must set out in his instructions facts from the evidence on which the jury may determine that there was no probable cause for the prosecution. (Hn 4) And although it may be said that a definition of probable cause is not essential, nevertheless, if the instructions leave it to the jury to determine, not only whether the facts alleged by plaintiff are true, but whether, if true, they prove a want of probable cause, such instructions are erroneous; because, the instructions leave to the jury not only its proper function to determine the facts but also the function of the court to determine the question of law. Whitfield v. Westbrook, supra; Greenwade v. Mills, supra; Emerson v. Skaggs, 52 Cal. 246; The Pennsylvania Company v. Weddle, 100 Ind. 138; Sweeney v. Perney, 40 Kan. 102; Bulkeley v. Smith, 2 Duer's Reports 272 (N. Y.); 34 Am. Jur., Malicious Prosecution, Sec. 168, p. 799.

(Hn 5) This Court pointed out in the above-mentioned case of Harvill v. Tabor the elements necessary to establish a malicious prosecution action, and said: ''Before probable cause can exist there must be a concurrence of (1) an honest belief in the guilt of the person accused,

and (2) reasonable grounds for such belief. One is as essential as the other.''

(Hn 6) It is apparent, therefore, that since no guide was given to the jury informing them what was necessary to make out the plaintiff's claim of malicious prosecution alleged in the declaration, the verdict of the jury and the judgment of the court must be reversed.

We have examined the other instructions complained of by appellant and find that there is no merit in the contention that any of these instructions contain reversible error, provided, of course, they are supplemented with an instruction explaining the facts necessary to establish probable cause. Instruction No. 3 is not erroneous. See State Life Insurance Company of Indianapolis, Indiana, et al. v. Hardy, 189 Miss. 266, 195 So. 708. Instruction No. 4 has been approved by many courts. Baker v. Hornik, 57 S. C. 213, 35 S. E. 524; Sloss-Sheffield Steel and Iron Company v. O'Neal, 169 Ala. 83, 52 So. 953; Roy v. Goings, 112 Ill. 656, 6 Ill. App. 140; Connelly v. White, 122 Iowa 391; Gurden v. Stevens, 146 Mich. 489. See also 34 Am. Jur., Malicious Prosecution, Sec. 71, p. 747.

(Hn 7) It is permissible for a defendant to show that he consulted an attorney as a part of his defense to a charge of lack of probable cause and malice. Moreover, where it is shown that defendant divulged a true, full and fair statement of facts to his attorney, and that prosecution was instituted in good faith, on the advice of said attorney, such facts, when established by a preponderance of the evidence to the satisfaction of the jury, is a complete defense to the charge of malicious prosecution. Winters v. Griffis, 233 Miss. 102, 101 So. 2d 346; 34 Am. Jur., Sec. 71, supra.

(Hn 8) During the trial of the issue, plaintiff offered in evidence certain affidavits made by defendant against the father and brothers of plaintiff, James Pat Ott. These affidavits were made at the time appellee was

being prosecuted, and were brought about as a result of the activity of members of the Ott family in entering the property purchased by W. D. Ott, through the fence gap, claimed by appellant. The members of the Ott family were acting together in an effort to gather hay on the land of W. D. Ott. It is contended by appellant that these affidavits were wholly irrelevant and threw no light on the issue joined between plaintiff and defendant in the trial court. The testimony for plaintiff reveals that a short time after W. D. Ott purchased the forty acre tract of land, defendant, appellant here, met W. D. Ott in front of Kroger's and said that he had set a trap for him and that he had gotten into it, and stated further that he wanted to give him his money back for the land. Appellee's theory of the lawsuit was that appellant was prosecuting him out of spite toward his father. Appellant did not deny the details of the foregoing conversation, except to say that he told Mr. Ott that he could cross the land as long as he kept the gap up. It is also observed that defendant, during the trial, continually testified about prosecuting members of the Ott family. He said ''I told the justice of the peace that I was not wanting to prosecute the boys because I knew they were sent in there by their father and couldn't help themselves because they went in there under his orders.'' If therefore the introduction of the affidavits had been error, it was harmless error, because, had the affidavits not been introduced in evidence, the jury would have nevertheless known about the other affidavits and prosecutions from the testimony of defendant himself. **(Hn 9)** Aside from this fact, we are of the opinion, however, that the court was correct in permitting the introduction of the affidavits as a circumstance from which the jury could infer malice. 34 Am. Jur., Malicious Prosecution, Sec. 135, p. 782, with reference to this subject, states in part: * * * **(Hn 10)** A wide

range in adducing attendant circumstances which tend to throw any light upon the subject is permitted. Therefore, for the purpose of establishing malice, the plaintiff may introduce evidence of the defendant's conduct and declarations, the situation of the parties, the nature and extent of the injurious means resorted to, and, according to the decided weight of authority, the zeal and activity of the defendant in pushing the prosecution against the plaintiff.'' See also Sec. 137, p. 783.

Appellant complains that his motion for a new trial was erroneously overruled for the reason, (among others), that the verdict of the jury was grossly excessive. A careful examination of the testimony in this case leads us to the conclusion that this contention is well taken, but since this case is to be retried, we refrain from discussing the evidence on which the jury verdict is predicated. We do point out, however, the language of the textwriter in 34 Am. Jur., Malicious Prosecution, Sec. 103, p. 765, as follows: ''Nevertheless, if the amount of recovery is so great as to shock the judicial conscience, the verdict will be set aside and a new trial ordered. * * * The primary duty to guard against an excessive verdict devolves upon the trial court, and great weight is given to its judgment.''

The judgment of the trial court is reversed and the case remanded for a new trial, in accordance with the foregoing opinion.

Reversed and remanded.

*McGehee, C. J., and Gillespie, McElroy and Jones, JJ.,* concur.