## HATCH WHITFIELD *v.* BLUFORD WESTBROOK.

1. BILL OF EXCEPTIONS: MATTER OF RECORD NOT SUPPLIED BY.—The office of a bill of exceptions is to place such extraneous matters upon record as do not constitute a part thereof: that which should appear of record, cannot be supplied by bill of exceptions.

2. MALICIOUS PROSECUTION: EVIDENCE TO SHOW PROBABLE CAUSE AND REBUT MALICE.—In a suit to recover damages for a malicious prosecution, in order to show probable cause for the prosecution, and to rebut the idea of malice, it is competent for the defendant to prove, that, before the commencement of proceedings, he advised with counsel in reference to the propriety thereof. The force of this testimony is determined by the truthfulness and extent of the disclosure made to counsel.

3. MALICIOUS PROSECUTION: PROBABLE CAUSE: QUESTION FOR COURT AND JURY.—The question of probable cause in an action for a malicious prosecution is a mixed proposition of law and fact. Whether the circumstances alleged to constitute probable cause are sufficiently established, is a matter of fact for the determination of the jury; but whether, supposing them to be true, as alleged, they amount to probable cause, is a question of law to be decided by the court. 31 Miss. 464.

3. MALICIOUS PROSECUTION: PROBABLE CAUSE, JURY TO BE INSTRUCTED IN REFERENCE TO.—The determination of the question of probable cause should not be referred to the jury, under any state of case, without instructing them as to the principles by which they are to be governed in determining the question.

5. MALICIOUS PROSECUTION: PROBABLE CAUSE: WANT OF, INFERRED FROM ACQUITTAL AND DISCHARGE OF PARTY PROSECUTED.—The want of probable cause is an inference of law from the acquittal and discharge of the party prosecuted; and in the absence of other testimony, the jury are bound to find according to the legal inference.

6. MALICIOUS PROSECUTION: WANT OF PROBABLE CAUSE, A CIRCUMSTANCE FROM WHICH JURY MAY INFER MALICE.—The want of probable cause is a circumstance from which a jury *may* infer malice. It is not a presumption of law, but of fact; a presumption which is not conclusive upon them in the absence of other proof, but left to their discretion.

7. INSTRUCTIONS TO JURY: CONTRADICTORY.—A charge, which involves a contradiction, is calculated to mislead the jury, and is erroneous.

8. MALICIOUS PROSECUTION: BELIEF OF GUILT WILL NOT AMOUNT TO PROBABLE CAUSE.—The belief, however confident and strong, that a party has probable cause for prosecuting another, if induced by the prosecutor's own error, mistake or negligence, and without any occasion of suspicion given by the party prosecuted, will not amount to probable cause.

9. DAMAGES: JURY MAY CONSIDER PECUNIARY CONDITION OF DEFENDANT.—In assessing damages in an action for a malicious prosecution, the jury may take into consideration the pecuniary condition of the defendant.

10. JUDGMENT: RECORD: RECITALS IN AS AGAINST WHOM RENDERED.—It is no ground of error, that, in an action against two defendants, the record recites that the judgment was rendered against "the defendant," without stating which.

ERROR to the Circuit Court of Monroe county. Hon. W. H. Killpatrick, judge.

This was an action of trespass on the case, brought by Bluford Westbrook against Hatch Whitfield and Wiley Howell, to recover damages for maliciously prosecuting Westbrook on a charge of larceny. To the declaration, which was in the usual form, defendants in the court below pleaded not guilty.

On the trial the following testimony was adduced by plaintiff:

Record of prosecution before justice of the peace. The affidavit, made by Howell, states that Bluford Westbrook did, on the 20th day of December, 1862, feloniously take and carry away certain property of Hatch Whitfield's. The warrant was executed by arresting the defendant. No judgment of the justices appears in the record.

J. H. G. Robinson and H. W. McAllister, testified that—They were the justices who tried Bluford Westbrook upon the charge of larceny. That he was in custody two days, and was acquitted without any deliberation, or argument of his counsel.

Bluford Westbrook (defendant in error) testified that—He was in custody two days, was deeply mortified and greatly harassed by the prosecution. Paid counsel, for defending him before the justices, $300.

Testimony for defendants.

Wiley Howell, testified that—Before making the affidavit, which appears in the record of the proceedings before the justices, he was sent for by his codefendant, Hatch Whitfield; found him at home sick. Whitfield told him that he understood that Bluford Westbrook had taken his horses, and to go and see Judge Davis or some other lawyer, and get his advice as to what course was necessary to be pursued. That he went to Judge Davis, told him what Whitfield had said. Judge Davis advised me to sue out a warrant for larceny. I went

with him to a justice of the peace, made the affidavit, and had the warrant issued to the constable.

Defendant's counsel asked witness if he told Judge Davis all the facts within his knowledge in reference to the taking of the property. Counsel for plaintiff objected, insisting that witness must state what he told Judge Davis. Objection sustained, and excepted to. Witness did not know Westbrook well; had seen him before. Did not know that in taking the property he was acting as agent for any one; did not know that any one else claimed the property but Whitfield. Had been for some time in possession of Whitfield's son.

Is son-in-law of Hatch Whitfield; has been his agent for some time, and in confidential relations with him.

Thomas H. Davis states that—He is a practising lawyer; has been for ten years. That in December, 1862, Wiley Howell came to him, said he was sent by Hatch Whitfield, and wanted my advice as to some property which he said Bluford West-brook had taken from Whitfield. That he stated that West-brook had taken one of the horses from a stable, and another from a field, on Whitfield's place. That under this state of facts he advised a prosecution for larceny, and went with Howell; wrote out the affidavit and warrant.

Did not know Westbrook. Heard nothing of any dispute about title to property, or that Mrs. Margaret Whitfield, sister of Bluford Westbrook, claimed the property, or that it was taken in open day, in presence of Whitfield's overseer.

Hatch Whitfield states, that—He was sick at the time the property was taken. It was not in the place where he lived. Sent for Howell, and told him to go and see Judge Davis, or some other lawyer, and get his advice. Did not advise any particular course; did not know what course had been advised until I came to town. Did not know that Westbrook was acting as agent for any one.

W. A. Stephens, testified that—The property alleged to have been taken by Westbrook was the property of Hatch Whitfield.

Testimony for plaintiff in rebuttal :—

M. P. Pridgun, testified that—The horses alleged to have

been taken by Westbrook, were the property of Needham A. Whitfield, and the same in controversy in the suit between *Margaret Whitfield, administratrix of Needham A. Whitfield* v. *Hatch Whitfield.*

Plaintiff then introduced verdict and judgment in case of *Margaret Whitfield, administratrix,* v. *Hatch Whitfield,* which showed that the horses taken were found to be the property of the said Margaret.

Margaret Whitfield, testified that—The property taken by Bluford Westbrook belongs to her husband, Needham A. Whitfield, and that Hatch Whitfield never claimed them.

Samuel Westbrook testified as to the ownership of the property.

Wiley Howell.—That Hatch Whitfield was a man of great wealth. To which defendant objected; objection overruled, and excepted to.

This was all the testimony.

The instructions to the jury, except the fifth, ninth and tenth, are embodied in the opinion of the court.

The fifth charge. " In a legal sense, any unlawful act done wilfully and purposely to the injury of another is, as against that person, malicious."

The ninth charge. " That the jury in considering· the damages which they may render in this case, may take into consideration the situation of the parties for wealth, character and independence, and find accordingly." The tenth charge is to the same effect.

The jury returned a verdict of $250 damages.

Defendants made a motion for·a new trial, which is set out at length in the record. No disposition of the motion appears in the record. The bill of exceptions contains the following recital in reference thereto, " which motion, after argument in reference thereto, was overruled. To all of which defendants then and there excepted, and tenders here to the court their bill of exceptions," etc.

A writ of error was prayed for, granted, and the cause brought to this court.

*J. M. Acker* and *Thos. H. Davis*, for plaintiffs in error, cited as to first assignment of error.

2 Greenleaf's Ev. 438, 439, 459; *Howlett* v. *Chuckley*, 1 Eng. Com. Law, 107; *Snow* v. *Allen*, 2 Eng. Com. Law, 292; 4 Pick. 393; 9 Metcalf, 268; 17 Ala. 28.

2. That the want of probable cause is the essential ground of the action, and must be established by positive and express proof. *Stone* v. *Crocker*, 24 Pick. 84.

What facts amount to probable cause is a question of law for the court; what facts and circumstances exist, is a question for the jury. 4 Pick. 84, 85; 1 Wendell, 345, 352; 1 Bunow, 1974; 1 Dumf. & East. 545.

3. That the fourth charge is abstract, and is not sustained by authority. 10 Johns. 106; 24 Pick. 84, 85, 86.

4. That probable cause did not depend upon the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting. 1 Campbell, 199, 202, 206, note *a*; 9 East. 36; 3 Adol. & Ellis, 488; 3 Bingham, 950; 2 Greenleaf, 435.

5. That it was material against which of the defendants execution can issue. The judgment does not direct us as to which. The execution must follow the judgment, and there being no judgment, no execution can ever issue.

*L. E. Houston* for defendant in error. No brief on file.

HARRIS, J., delivered the opinion of the court.

Defendant in error brought this action, in the court below, to recover of plaintiff in error damages for a malicious prosecution. Upon the issue joined, there was a jury and verdict for defendant in error, and judgment; and the cause is prosecuted here, upon writ of error, to reverse that judgment.

The errors relied on, appear by a bill of exceptions taken and allowed on the trial. By this bill of exceptions, it appears that a motion was made for a new trial, which was refused. No motion, or judgment thereon, appears on the record, otherwise than by the bill of exceptions. In the case of the *N. O. J. &*

*G. N. R. R. Co.* v. *Allburton*, 38 Miss. R., page 242, it was held, that the office of a bill of exceptions is to place upon record such extraneous matters as do not necessarily constitute a part of the record in the cause. The pleadings of the parties and the judgments of the court must appear by the record itself, and cannot be supplied by a bill of exceptions. They should not be contained in the bill of exceptions. We cannot, therefore, notice the error assigned in this respect.

The other assignments refer to the action of the court in the progress of the trial.

The first assignment is in reference to the testimony of the witness Howell. He was asked by counsel for plaintiff in error whether he stated all the facts in his knowledge, at the time he consulted counsel in reference to the prosecution out of which this suit originated, and asked his advice in relation thereto. This question was objected to by counsel for defendant in error, on the ground that it was not competent for the witness to say that he told his counsel " all the facts," but that he should state " what he did tell " him. This objection was sustained, and we think correctly. The object of the testimony on the part of plaintiff in error was to show probable cause, and to rebut the idea of malice, by showing that he had consulted counsel learned in the law, before instituting the prosecution ; and the force of this testimony could only be ascertained by the truthfulness, as well as the full disclosure, of the facts upon which counsel is supposed to have founded his judgment. To allow the witness to state simply that he " stated all the facts in his knowledge," instead of stating *what facts* he communicated to his counsel, would have enabled the witness, who was a party defendant to the action, to evade the real questions upon which this matter of defence rested.

The next assignment relied on is, that the court erred in instructing the jury, at the instance of defendant in error, " that if they believed, from the evidence, that the defendants instituted and carried on a prosecution against plaintiff, on the charge of larceny, of which he was acquitted, and that the pros-

Whitfield *v.* Westbrook.

ecution was without probable cause, and malicious, they must find for the plaintiff."

This instruction was erroneous, because it left the question of probable cause to the jury entirely. In the case of *Greenwade* v. *Mills*, 31 Miss R., page 464, it is said, that "since the leading case of *Johnstone* v. *Sutton* (1 T. R., page 540), it is universally agreed that the question of probable cause is a mixed question of law and of fact; that whether the circumstances alleged to constitute probable cause are sufficiently established, is a matter of fact for the jury; but whether, supposing them to be true, as alleged, they amount to probable cause, is a question of law, to be decided by the court." It is held in this case "that it is error to refer the determination of the question of probable cause to the jury, *under any state of case*, without declaring to them the principles by which they must be governed in determining the question." The authorities for this position are cited, and the duty of the court in instructing the jury on this point is clearly indicated.

The third assignment is, that the court erred in giving the second instruction as well as the third, for plaintiff below, as follows:—

" 2. That the discharge and acquittal of a party by the court before whom he was tried, on the charge of larceny, is *primâ facie* evidence of the want of probable cause for the prosecution.

" 3. That in the prosecution for larceny, the want or absence of probable cause, is *primâ facie* evidence of malice in the premises."

The second instruction is correctly stated, and belongs to that class of *presumptions of law*, which Mr. Greenleaf, in his work on evidence, denominates "*disputable presumptions of law*," as contradistinguished from "*conclusive presumptions of law*." In the former, *the law itself*, without the aid of a jury, infers the existence of an unknown fact, from the proved existence of another, in the absence of all opposing evidence; and if none such be offered, the jury are bound to find in favor of such presumption of law. In the latter class, the rule of

law merely attaches itself to circumstances when proved; it is not deduced from them, or inferred. It is not a rule of inference, from testimony, but a rule of protection, as expedient, and for the general good, forbidding all further evidence.

But the third instruction is too strongly stated. The want of probable cause, is not "*primâ facie evidence* of malice." Mr. Greenleaf states the rule thus: "The proof of malice may not be direct, it *may be inferred* from circumstances, * * and it *may be* inferred *by the jury*, from the want of probable cause." The rule, as stated by Mr. Greenleaf, shows that the inference of malice, which *may be* drawn from the want of probable cause, is not an inference of *law*, or "*primâ facie evidence*" by which the jury are bound at all events, but "the whole matter is free before them, unembarrassed by any considerations of policy, or convenience, and unlimited by any boundaries but those of truth; to be decided by themselves, according to the convictions of their own understanding." And this rule belongs to still another division, as stated by Mr. Greenleaf, which he denominates "*presumptions of fact*," as contradistinguished from the two former divisions, which he denominates "*presumptions of law.*"

He says, "*presumptions of fact* can hardly be said with propriety to belong to the law of evidence. They are, in truth, but mere arguments." * * * "They differ from presumptions of law in this essential respect, that while *those* are reduced to fixed rules, and constitute a branch of the particular system of jurisprudence to which they belong, *these* merely natural presumptions are derived wholly and directly from the circumstances of the particular case by means of the common experience of mankind, without the aid or control of any rules of law whatever." The jury may or may not, therefore, "infer malice" from the fact or circumstance of the want of probable cause. It is not *primâ facie evidence* or an *inference of law* by which a jury is bound until the contrary is proved; but a "natural presumption," derived from the circumstances of the particular case by experience, without the aid or control of the law; for the consideration of the

Whitfield *v.* Westbrook.

jury, and to be decided by them as they may deem consistent with truth and justice.

This instruction was therefore erroneous.

It is next assigned for error, that the court gave the following instruction for plaintiff below:

"It is not necessary, to render an act malicious, that a party be actuated by a feeling of hatred or ill-will towards the individual, or that he entertain and pursue any general bad purpose or design; on the contrary, he may be actuated by a general good purpose, and have a real and sincere design to bring about a reformation of manners; but in pursuing that design, if he wilfully inflicts a wrong on others which is not warranted by law, such act is malicious.

This instruction is erroneous, because it involves a contradiction, and was calculated to mislead the jury. Shortly stated, it amounts to this: That if one be actuated by a real, sincere design to bring about a reformation of manners, but in pursuing that object, if he designs to inflict a wrong, not warranted by law, such wrong is malicious. Or shorter still—if he designs to do right and designs to do wrong, such wrong is malicious. The two motives here assigned in reference to the same act are wholly inconsistent, and cannot coëxist in the same mind, as here stated.

The next error assigned is, that the fifth instruction was improperly given.

This instruction, as a legal proposition, is accurately stated. But if not abstract, it is at least so remotely applicable, as to render its propriety in this case questionable.

The sixth ground of error is that the court erred in giving the charge, as follows:

"That if defendant believed he had probable cause for prosecuting plaintiff, however strong and confident his belief might have been, yet if it was induced by his own error, or mistake, or negligence, it will not amount to such probable cause as will give him any defence in this action." This rule seems to be extracted from the second volume of Greenleaf on Evidence, page 455, section 4, 5, but it omits a material qualification, there

annexed.    Mr. Greenleaf thus states it: "But if this belief, however confident and strong, was induced by the prosecutor's own error, mistake, or negligence, *without any occasion for suspicion given by the party prosecuted*, it will not amount to probable cause."

The seventh assignment, embraces the ninth and tenth instructions, which substantially assert, that the jury in assessing damages in a proper case may take into consideration the means or pecuniary ability of the defendant.    This is a familiar principle, which has been long acted on by juries, by the direction of enlightened judges, upon the ground that an amount of damages, intended as punitive, which would ruin a poor man, might scarcely be felt by one of abundant means.

We think these instructions were correctly stated.

The last assignment is, that the record shows that the judgment was rendered against "the defendant," without stating which defendant.

This assignment presents no ground of error.

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.