## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 93-CA-00187-SCT

*MICHAEL A. NASSAR*

*v.*

*CONCORDIA ROD AND GUN CLUB, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/93 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT G. JOHNSON |
| ATTORNEY FOR APPELLEE: | RICHARD L. KIMMEL |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED IN PART; REVERSED AND RENDERED IN PART - 10/24/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/14/96 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

¶1. This case presents the Court with a de novo review, while applying an objective reasonableness standard, of a factual scenario involving the decision of a citizen to file a criminal affidavit against another thought to have committed the misdemeanor crime of shooting a firearm from the Mississippi River levee near Gunnison, Mississippi. The crux of the case presented to the Court on summary judgment concerns whether the defendant, Robert Canady, an employee of Concordia Rod & Gun Club, Inc. [hereinafter Concordia], had an objectively reasonable belief, i.e., probable cause, after conducting what is alleged as an unreasonable inquiry, that the plaintiff, Mike Nassar, was the correct person to file charges against for the undisputed violation.

¶2. The facts reveal that Canady should have more thoroughly investigated the identity of the unknown shooter given the conflicting evidence he had prior to filing the charges.[1] Because the facts were not in dispute as to what happened to whom and when, the determination of probable

cause in this malicious prosecution case was the trial judge's decision.[2] Accordingly, the trial judge, and now this Court, had to determine, while applying an objective reasonableness standard, whether or not Canady acted reasonably in his inquiry to establish an objectively reasonable ground to believe that the unknown shooter was Mike Nassar.

¶3. The facts revealed that at the time Canady filed the affidavits, he had apparently spoken with three persons to try and identify the nameless shooter. One of the three felt that Mike Nassar had to have been that person. Another of the three expressed reservations about the identity after initially agreeing that Mike Nassar was the nameless shooter. The third individual also thought that Mike Nassar was the shooter, but subsequently expressed reservation about the correct identity which was based upon six-year-old information.

¶4. Prior to filing charges, Canady and the others apparently knew where the suspected individual, Mike Nassar, resided and could be located,[3] which was approximately fifteen miles away, but yet did not attempt to "eye-ball" Mike Nassar to verify their suspicions. Accordingly, the question to determine the issue in this case becomes whether or not Canady should have tried to "eye-ball" Mike prior to filing charges. Given the circumstances, namely that there were conflicting opinions and that the burden of locating the suspect to make sure that the correct person was charged was not beyond the realm of reason, Canady did not have an objectively reasonable basis to have probable cause to file the charges against Mike Nassar. Therefore, the case must be reversed and remanded in part regarding actual damages.

¶5. An additional issue regarding Nassar's pursuit of punitive damages must be rendered in favor of Concordia. The record, Nassar's deposition, reveals that he did not believe that Canady was filing the charges for any reason other than to fulfill his civic duty and employment obligations. Accordingly, the record does not support the possibility of punitive damages. Therefore, the punitive damage request is rendered in favor of Concordia and will not be considered on remand.

## STATEMENT OF THE CASE

¶6. The procedural history of this case began on August 20, 1990, with the filing of a complaint by Michael A. Nassar in the Circuit Court of the Second Judicial District of Bolivar County, Mississippi. The complaint alleged that Robert Canady, as an agent of Concordia, was liable for false arrest and malicious prosecution. Nassar sought $250,000 in actual damages and $500,000 in punitive damages. The alleged damages stemmed from Nassar's December 4, 1989, arrest for shooting a firearm from the levee.

¶7. Concordia filed its answer on September 27, 1990, denying any liability. Discovery commenced including, but not limited to, interrogatories, depositions, request for admissions and production of documents. Concordia subsequently filed its motion for summary judgment on April 2, 1992. Nassar responded to the motion, and after briefing said motion, it was heard on February 17, 1993, by the Honorable Elzy J. Smith. Upon hearing all of the evidence and arguments presented, Judge Smith rendered an opinion and order granting Concordia's motion for summary judgment wherein he held that there was no issue as to the following material facts followed by his analysis and holding:

> **1.** On or about December 1, 1989, Bobby Canady was employed as a caretaker by Defendant.
> **2**. On the same date, Canady resided adjacent to the Mississippi River levee near Dennis

Landing and heard gunshots being fired from the levee near his home. **3**. It is a misdemeanor to fire guns and hunt from a motorized vehicle off the mainline Mississippi River levee. **4**. After hearing the shots, Bobby Canady investigated the incident and stopped the vehicle from which the shots were fired and requested the names and addresses of the two occupants of the vehicle. **5**. The driver of the vehicle identified himself as Buck Burroughs and told him he resided in Shelby, Mississippi. The passenger in the vehicle refused to provide Mr. Canady with his name and address. **6**. Subsequent to the incident, Mr. Canady undertook to determine the correct name and address of the occupant of the Burroughs' vehicle and was advised by at least one other person, Red Yarborough, a long time caretaker of a hunting club near where the incident occurred, that the occupant who refused to identify himself was Plaintiff, Michael A. Nassar. **7**. Canady, after investigation, believed in good faith that the unidentified occupant of the Burroughs' vehicle was Michael A. Nassar and filed charges in the Bolivar County Justice Court against Buck Burroughs and Michael Nassar charging them with hunting from the Mississippi River levee. **8**. A warrant was issued for Plaintiff's arrest and he was arrested for the charge. **9**. Prior to the Justice Court hearing and within a few days of after the Affidavit was signed, Mr. Canady was advised that plaintiff was not, in fact, the occupant of the vehicle but the correct name of the occupant was John William Nassar, a cousin of Plaintiff, who also resided in Shelby, Mississippi. **10**. Mr. Canady then immediately called the Justice Court to have the charges dismissed and was advised by the Justice Court Judge that the charges had in fact been dismissed against the Plaintiff. **11**. Plaintiff was not required to defend the charges brought against him. **12**. Another Affidavit was filed against John William Nassar and he was ultimately arrested and both he and Buck Burroughs plead guilty to the charges. **13**. Plaintiff admitted in his deposition that he did not believe that Bobby Canady acted with malice. Nassar also stated that he did not believe Bobby Canady had any ill will toward him. [(4)](#)

The elements of malicious prosecution are: (1) The institution or continuation of original judicial proceedings, either criminal or civil; (2) By, or at the instance of the defendant; (3) Determination of such proceedings in Plaintiff's favor; (4) Malice in instituting the proceeding; (5) Want or probable cause for the proceeding; and (6) The suffering of damage as a result of the action or prosecution. *Page v. Wiggins*, 595 So. 2d 1291, 1293 (Miss. 1992); *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991); *Mississippi Road Supply v. Zurich-American Ins. Co.*, 501 So. 2d 412, 414 (Miss. 1987); *Royal Oil Company, Inc., v. Wells,* 500 So. 2d 439, 442 (Miss. 1986); *Pugh v. Esterling*, 367 So. 2d 935, 937 (Miss. 1979).

While several of the elements of malicious prosecution can be found in this case, the fourth and fifth elements cannot be found. To determine if the defendant acted with malice, the Court must look to the defendant's subjective state of mind. (Fn#1. The defendant denies that Canady acted within the scope of his employment, but the Court sees no need to address that issue in this opinion since the Plaintiff's claims fail for the other reasons set forth in this opinion.) *Page v. Wiggins*, *supra*; *Owens v. Kroger Co*., 430 So. 2d 843, 846 (Miss. 1983). As the Mississippi Supreme Court stated in the *Page* case, the term "malice" is used in an artificial and legal sense and applied to prosecutions instituted primarily for purposes other than that of bringing an offender to justice. The plaintiff has offered no facts to support that Canady acted with malice. There is no suggestion that Canady acted with any motive other than as a law abiding citizen attempting to see that law violators were brought to justice. As in the *Page* case, Nassar

admitted that Canady neither knew him nor had ever been acquainted with him prior to the night of the incident in question. Mr. Canady's explanation of the incident leading to the charge and the ultimate arrest of plaintiff is uncontradicted. The facts clearly indicate that Mr. Canady acted in good faith in bringing the charges. It was simply a case of mistaken identity.

The Court is also of the opinion that Mr. Canady acted with probable cause. Plaintiff does not offer facts which dispute Canady's claim that he honestly believed that at the time the charges were filed against Plaintiff, that he was guilty. The investigation conducted by Canady gave him reasonable grounds for such belief. Accordingly, Canady had probable cause to file the charges against Nassar.

The plaintiff has also charged defendant with false arrest which plaintiff concedes should actually be a charge of false imprisonment. To sustain a charge of false imprisonment, the plaintiff must prove that his detention was unlawful. Our Supreme Court has stated that false imprisonment is an arrest without legal process. ***Little v. U.S.F.& G***, 64 So. 2d 697; ***Thornhill v. Wilson***, 504 So. 2d 1205 (Miss. 1987). Plaintiff has offered no facts to support the charge of false imprisonment. The plaintiff's arrest was not unlawful, but was the result of a valid warrant being issued after an affidavit was filed in good faith.

Accordingly, the Court is of the opinion that summary judgment should be entered in favor of the defendant as to the charges of malicious prosecution and false arrest.

The plaintiff has also charged that the defendant acted with gross negligence. At the hearing on defendant's motion, plaintiff moved, ore tenus, to dismiss and withdraw the charge of gross negligence and to proceed solely on the claim of malicious prosecution and false arrest. The defendant did not object to the motion and the Court is of the opinion it should be granted.

IT IS THEREFORE HEREBY ORDERED AND ADJUDGED AS FOLLOWS:

1. That plaintiff's motion, ore tenus, to dismiss the charge of gross negligence (and simple negligence to the extent that it is included) be and it is hereby sustained;

2. That summary judgment be and it hereby is entered in favor of defendant and against plaintiff as to the charges of malicious prosecution and false arrest and the complaint filed by plaintiff against defendant is hereby dismissed with all costs to plaintiff.

¶8. Aggrieved by the trial court granting Concordia's summary judgment motion, Nassar perfected his appeal to this Court requesting review of five issues which are reproduced below as stated in Nassar's brief.

> **I. DID ALL THE EVIDENCE IN THE RECORD SHOW THAT THERE WAS A GENUINE MATERIAL ISSUE OF FACT ON TWO ELEMENTS OF THE TORT OF MALICIOUS PROSECUTION, WANT OF PROBABLE CAUSE AND MALICE, THE OTHER ELEMENTS BEING CONCEDED, SO AS TO PRECLUDE AND MAKE IMPROPER THE LOWER COURT'S GRANTING OF SUMMARY JUDGMENT TO THE DEFENDANT?**

¶9. As part of the above principal issue for review, the case presents the following sub-issues

according to Nassar.

**II. WAS, AS A MATTER OF LAW, AND ON MOTION FOR SUMMARY JUDGMENT, THE LOWER COURT CORRECT WHEN IT RULED THAT, ON THE QUESTION OF MALICE IN A MALICIOUS PROSECUTION SUIT, THAT IT HAD TO LOOK TO THE DEFENDANT'S SUBJECTIVE STATE OF MIND RATHER THAN PERMITTING A JURY TO INFER MALICE FROM WANT OF PROBABLE CAUSE AS ENUNCIATED IN SEVERAL MISSISSIPPI CASES?**

**III. WAS THE LOWER COURT CORRECT IN RULING THAT THE PLAINTIFF PRESENTED NO EVIDENCE OF MALICE WHEN THE RECORD WAS REPLETE WITH EVIDENCE THAT THE AFFIANT, CANADY, WAS DOING HIS JOB AS A CARETAKER PATROLLING FOR TRESPASSERS FOR THE DEFENDANT HUNTING CLUB WHEN HE STOPPED THE CAR IN QUESTION AND LATER MADE CRIMINAL CHARGES, THROUGH MISTAKEN IDENTITY, AGAINST THE PLAINTIFF?**

**IV. AS A MATTER OF LAW, IF A JURY ISSUE IS MADE ON LACK OF PROBABLE CAUSE, IS NOT THE ISSUE OF MALICE ALWAYS ONE FOR THE JURY, THUS MAKING THE QUESTION OF MALICE IRRELEVANT ON A MOTION FOR SUMMARY JUDGMENT IF THERE IS DEMONSTRATED A MATERIAL ISSUE OF FACT ON THE QUESTION OF PROBABLE CAUSE?**

**V. IS THERE CONFLICT BETWEEN THE *PAGE* DECISION ON THE ONE HAND, AND THE *WHITFIELD, OWENS v. KROGER CO.*, AND *ROYAL OIL* CASES ON THE OTHER, AS TO WHETHER MALICE MAY BE INFERRED FROM WANT OF PROBABLE CAUSE?**

## STATEMENT OF THE FACTS

¶10. The facts of this case began on December 1, 1989, when Canady, who lives at Dennis landing on the Mississippi River near Gunnison, Mississippi, noticed a car turn past his home and go onto the Mississippi River levee.[5] Shortly after the car got out of sight, Canady heard a gunshot come from the levee near Dennis Landing Road. Canady proceeded to investigate the shot and found only one car on the levee containing two white males. Canady asked for their names and identification and eventually got Buck Burroughs to disclose his identity. However, the other white male refused to disclose his identity to Canady. Therefore, Canady subsequently tried to determine his identity because he felt that he was "just doing his job" and because "that's every individual's duty."[6]

¶11. In his effort to determine the identity of the person, Canady talked with Red Yarborough, a local caretaker of a neighboring hunting club, Donaldson Point. Because it was Buck who was in the car, Yarborough thought that it was probably Mike Nassar who was with Buck because he knew that they rode around together. Thus, Red Yarborough told Canady that, "I bet that it was them" and that "Well, that would have been more likely Mike Nassar."[7] Canady stated in his deposition that he was honestly convinced by Yarborough that the other person was Mike Nassar. Accordingly, because the only information that Canady had upon which to base his determination of the identity of the other person in the car as Nassar was that from Yarborough, Nassar contends that even though undisputed,

such facts create a jury question as to probable cause making Judge Smith's grant of summary judgment improper. ("When the facts are undisputed, it is the function of the court to determine whether or not probable cause existed. If the facts are in dispute, under our decisions it is a jury question, based upon proper instructions, to determine whether or not probable cause existed." *Owens v. Kroger*, 430 So. 2d 843, 846 (Miss. 1983)).

¶12. The foregoing evidence was the basis of Canady's probable cause to file his affidavit against Nassar. However, Canady subsequently discovered from Billy Bassie that it was not Mike Nassar, but rather Mike's cousin, John William Nassar, that was the other individual shooting from the levee. Upon discovering that it was not Mike, but rather his cousin William, Canady immediately went to see the justice court judge to have the charges dismissed, which had in fact already been dismissed. Mike was never tried or required to defend this charge. Thereafter, Mike Nassar instituted this complaint, and on appeal, as in the trial court, asserts that Canady lacked probable cause to institute the criminal proceedings requiring reversal of the summary judgment granted Concordia.

¶13. As support for his contention that the trial judge erred as a matter of law in finding that probable cause existed, Mike Nassar points to the following information from Floyd Sanders, a local conservation officer, and Stanley Canady, Canady's half brother. Sanders testified that he received a call the night before charges were filed from Hal Eddington, head caretaker of Concordia, requesting that he meet Canady at the justice court office the next day to assist Canady in the filing of the charges.

¶14. Sanders met Canady at the justice court the next day where they discussed the matter prior to Canady filing the affidavit. Canady described the unknown shooter to Sanders who asked Canady if the shooter had long hair. Canady said that the unknown person did not have long hair which created doubt in Sanders' mind as to whether or not it was Mike Nassar because the last time he saw Mike Nassar, five or six years prior, Mike had long hair. Specifically, Sanders said, "I don't know if it was Mike or -- I don't know the Nassars that well up there. I don't know who it was." Additionally, when asked during his deposition if Canady had his mind made up as to the unknown person's identity when Sanders met him at the justice court office, Sanders replied, "Maybe not Mike Nassar. But he knew this was a Nassar, and he didn't know any other Nassar that hunted that fit this particular description." Sanders also stated in his deposition that he did not influence Canady to file charges against anyone in particular because he was "throwed for a loop" when Canady told him the suspect did not have long hair. However, Sanders did tell Canady that Mike Nassar was the only Nassar he knew, and that he had previous problems with Mike Nassar hunting from the levee.

¶15. The other information offered by Mike Nassar to refute the trial judge's finding of probable cause comes from Stanley Canady, Canady's half brother. The sum and substance of Stanley's testimony was that Canady had asked him on the day of the incident if he knew who it was that was with Buck. Stanley responded that he felt that it was probably Mike Nassar because that was the only one he knew. However, Stanley asked Canady if the unknown shooter had "a beard, a mustache or anything of that sort?" Canady informed Stanley that the suspect did not which caused Stanley to tell Canady that, "Naw, it's not Mike Nassar. It couldn't be Mike 'cause Mike has a beard."[(8)] Therefore, Mike Nassar asserts that the trial judge improperly found that Canady had an objectively reasonable basis upon which to have probable cause to institute the criminal proceedings requiring reversal of Concordia's successful motion for summary judgment. We agree.

## DISCUSSION OF ISSUES

**¶16.** The appellant requests review of one primary issue and four interrelated other issues. The primary query is dispositive of the case, and therefore the matter will be decided under one discussion.

> **I. DID ALL THE EVIDENCE IN THE RECORD SHOW THAT THERE WAS A GENUINE MATERIAL ISSUE OF FACT ON TWO ELEMENTS OF THE TORT OF MALICIOUS PROSECUTION, WANT OF PROBABLE CAUSE AND MALICE, THE OTHER ELEMENTS BEING CONCEDED, SO AS TO PRECLUDE AMD MAKE IMPROPER THE LOWER COURT'S GRANTING OF SUMMARY JUDGMENT TO THE DEFENDANT?**

¶17. Our standard of appellate review for a trial court granting summary judgment is de novo. Additionally, as was stated in the seminal summary judgment case of ***Brown v. Credit Center, Inc.,*** 444 So. 2d 358, 362 (Miss. 1983):

> The trial court must review carefully all of the evidentiary matters before it -- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion is made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.

¶18. Accordingly, if Judge Smith, taking all of the evidence in the light most favorable to Nassar, was able to say that there were no genuine issues of material facts to resolve, and that Concordia was entitled to judgment as a matter of law, then his ruling would be affirmed. However, we disagree and find that there was a material fact and accordingly reverse.

¶19. The issues in this case are familiar and the law controlling has been repeatedly enunciated by this Court. As was restated in ***Page v. Wiggins***, 595 So. 2d 1291, 1293 (Miss. 1992):

> The elements of malicious criminal prosecution are: (1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the insistence of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution. ***Strong v. Nicholson***, 580 So. 2d 1288, 1293 (Miss. 1991); ***Miss. Road Supply v. Zurich-American Ins. Co.***, 501 So. 2d 412, 414 (Miss. 1987); ***Royal Oil Co., Inc. v. Wells***, 500 So. 2d 439, 442 (Miss. 1986); ***Pugh v. Easterling***, 367 So.2d 935, 937 (Miss. 1979).

¶20. Additionally, as restated in ***Page v. Wiggins***, 595 So. 2d 1291, 1293 (Miss. 1992):

> In Mississippi, to determine if the defendants acted with malice, the fourth factor, we must look to their subjective state of mind. ***Owens v. Kroger Co.,*** 430 So. 2d 843, 846 (Miss. 1983). In an effort to define malice, this Court has said that the term "malice" in law of malicious prosecution is used in an artificial and legal sense <u>and applied to prosecution instituted primarily for purpose other than that of bringing offender to justice</u>. ***Benjamin v. Hooper Electronic***

***Supply Co.,*** 568 So. 2d 1182, 1191 (Miss. 1990); ***Royal Oil***, 500 So. 2d at 444; ***Owens***, 430 So. 2d at 846. Malice refers to the defendant's objective state of mind, not his attitude. Malice can be inferred from the fact that a defendant may have acted with reckless disregard for plaintiff's rights. ***Strong***, 580 So. 2d at 1293. (emphasis added).

¶21. The ***Page*** Court further stated that:

As to the fifth element, for purposes of a malicious prosecution action, probable cause requires a concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief. ***Royal Oil Co.,*** 500 So. 2d at 443. One is as essential as the other. ***Benjamin*** 568 So. 2d at 1190. It is ordinarily necessary for the plaintiff to show circumstances from which absence of probable cause may be inferred. This Court has held that unfounded suspicion and conjecture are not proper bases for finding probable cause. *Id*. To determine the existence of probable cause, courts look to (1) a subjective element--an honest belief in the guilt of the person accused, and (2) an objective element--reasonable grounds for such beliefs. ***Strong***, 580 So. 2d at 1294. For example:

The existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. That is to say, the court will determine whether upon the appearances presented to the defendant, a reasonable person would have instituted the proceeding.

***Page***, 595 So. 2d at 1294 (emphasis added); citing Prosser & Keeton, *The Law of Torts* § 119 (5th ed. 1984)

¶22. The Court over thirteen years ago recognized and balanced the competing interests involved surrounding the tort of malicious prosecution when it noted that:

The Second Restatement of the Law of Torts states that the rules imposed upon any recovery for wrongful prosecution of criminal proceedings represent an adjustment between two highly important social interests:

The first is the interest of society in the efficient enforcement of the criminal law, which requires that private persons who aid in the enforcement of the law should be given an effective protection against the prejudice that is likely to arise from the termination of the prosecution in favor of the accused. The second is the interest that the individual citizen has in being protected against unjustifiable and oppressive litigation of criminal charges, which not only involve pecuniary loss but also distress and loss of reputation. Restatement (Second) of Torts introductory note at 405 (1977).

***Owens,*** 430 So. 2d at 846.

¶23. The ***Owens*** Court also held that:

In analyzing probable cause and malice, courts look to objective facts as to the former and the subjective state of mind as to the latter. Probable cause is determined from the facts apparent to the observer when prosecution is initiated. When the facts are undisputed, it is the function of

the court to determine whether or not probable cause existed. If the facts are in dispute, under our decisions it is a jury question, based upon proper instructions, to determine whether or not probable cause existed. Malice, on the other hand, is a mental state. Its existence may be proved by circumstantial evidence, or the jury may infer malice from the facts of the case.

This Court examined the two concepts in *Whitfield v. Westbrook*, 40 Miss. 311 (1866). We stated:

"[I]t is universally agreed that the question of probable cause is a mixed question of law and of fact; that whether the circumstances alleged to constitute probable cause are sufficiently established, is a matter of fact for the jury; but whether, supposing them to be true, as alleged, they amount to probable cause, is a question of law, to be decided by the court. . . . [I]t is error to refer the determination of the question of probable cause to the jury, under any state of case, without declaring to them the principles by which they must be governed in determining the question." [T]he duty of the court in instructing the jury on this point is clearly indicated.

*Owens*, 430 So. 2d at 847 (emphasis added); *Whitfield,* 40 Miss. at 317, quoting *Greenwade v. Mills*, 31 Miss. 464, 467-68 (1856).

¶24. The *Owens* Court further recognized:

We also stated in *Whitfield v. Westbrook* that the absence of probable cause in the institution of a criminal proceeding was a circumstance from which the jury would be permitted, but not required to infer malice.

[T]he inference of malice, which may be drawn from the want of probable cause, is not an inference of law, or "prima facie evidence" by which the jury are bound at all events, but "the whole matter is free before them, unembarrassed by any considerations of policy, or convenience, and unlimited by any boundaries but those of truth; to be decided by themselves, according to the convictions of their own understanding." . . .

"[T]hese merely natural presumptions are derived wholly and directly from the circumstances of the particular case by means of the common experience of mankind, without the aid or control of any rules of law whatever." The jury may or may not, therefore, "infer malice" from the fact or circumstance of the want of probable cause. It is . . . a "natural presumption," derived from the circumstances of the particular case by experience, without the aid or control of the law; for the consideration of the jury, and to be decided by them as they may deem consistent with truth and justice.

*Owens*, 430 So. 2d at 847; *Whitfield,* 40 Miss. at 318-19 (emphasis in original).

In both *State Life Insurance Co. of Indianapolis* and *Brown v. Kisner* we likewise held that the term "malice" in the law of malicious prosecution was used in an artificial and legal sense, and applied to a prosecution instituted primarily for a purpose other than that of bringing an offender to justice.

*Owens*, 430 So. 2d at 847 (emphasis added).

As held in ***Brown v. Watkins***:

> Unlike probable cause, the question of malice is to be determined by the jury unless only one conclusion may reasonably be drawn from the evidence. The defendant's improper purpose usually is proved by circumstantial evidence. And lack of probable cause for the initiation of the criminal proceedings is evidence of an improper purpose.

***Owens***, 430 So. 2d at 848 (emphasis added); ***Brown,*** 213 Miss. at 373, 56 So. 2d at 891 (citation omitted).

¶25. The Court also recognized in ***Benjamin v. Hooper Electric Supply Co.***, 568 So. 2d 1182 (Miss. 1990) that:

> Probable cause is determined from the facts apparent to the observer when the prosecution is initiated. ***Owens***, 430 So. 2d at 846. In order to find probable cause there must be a concurrence of (1) an honest belief in the guilt of the person accused and (2) reasonable grounds for such belief. One is as essential as the other. ***Royal Oil***, 500 So. 2d at 443; ***see also Harvill v. Tabor***, 240 Miss. 750, 755, 128 So. 2d 863 (1961); ***Woolfolk v. Tucker***, 485 So. 2d 1039 (Miss. 1986). Unfounded suspicion and conjecture are not proper bases for finding probable cause. ***Miller v. East Baton Rouge Parish Sheriff's Dept.***, 511 So. 2d 446, 453 (La. 1987); Prosser & Keeton, *supra*, at p. 876. When the facts are undisputed, it is the function of the court to determine whether probable cause existed. ***Owens***, 430 So. 2d at 846. On the other hand, when the facts are in dispute, this Court has proclaimed that it becomes a jury question and it is for them to determine based upon proper instructions. *Id.*; ***accord Wal-Mart Stores, Inc. v. Yarbrough***, 284 Ark. 345, 681 S.W.2d 359, 361 (1984) (Unless both the facts and the reasonable inferences to be deduced from those facts are undisputed, this issue is to be submitted to the jury); ***Wainauskis v. Howard Johnson Co***., 339 Pa. Super. 266, 488 A.2d 1117, 1122 (1985) (where material facts are in controversy it becomes a mixed question of law and fact; therefore, it is the jury's duty, under proper instructions from the court as to what will justify a criminal prosecution, to say whether the plaintiff in the civil action has shown want of probable cause upon the part of the defendant). Want of probable cause may be proven by circumstantial evidence, but it is ordinarily necessary for the plaintiff to show circumstances from which the absence of probable cause may be inferred. ***Royal Oil***, 500 So. 2d at 444. If the evidence is such that the jury could have believed the prosecution was instituted without probable cause then that issue should go to the jury. ***Cf. Royal Oil***, 500 So. 2d at 444 (where jury could have believed there was no probable cause, a verdict in favor of the plaintiff could not be set aside). . .*Cf.* Harper and James, *supra*, § 4.5, n.6 (where a reasonable person would investigate further before instigating a proceeding, the failure to do so is an absence of probable cause); ***see also Wainauskis***, 488 A.2d at 1123 (probable cause must not be based upon an inadequate and unreasonable investigation of the circumstances concerning the alleged criminal conduct).

***Benjamin,*** 568 So. 2d at 1190-91 (emphasis added).

¶26. The Court stated in ***Strong v. Nicholson***, 580 So. 2d 1288, 1293 (Miss. 1991), that:

> Malice does not refer to mean or evil intent, as a layman might ordinarily think. Rather, malice

in the law of malicious prosecution is a term used in an artificial and legal sense. It connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice. *Benjamin v. Hooper Electronic Supply Co.,* 568 So. 2d at 1191; *Royal Oil Co., Inc. v. Wells,* 500 So. 2d at 444; *Owens v. Kroger Co.,* 430 So. 2d at 847; *State Life Insurance Co. of Indianapolis v. Hardy*, 189 Miss. 266, 277, 195 So. 708, 713 (1940). As such, it refers to the defendant's objective, not his attitude. Malice may be and usually is shown by circumstantial evidence. The jury may infer malice from the facts of the case. *Benjamin*, 568 So. 2d at 1191; *Royal Oil*, 500 So. 2d at 444; *Owens,* 430 So. 2d at 847. Malice may be inferred as well from the fact that a defendant may have acted with reckless disregard for the plaintiff's rights. *Benjamin*, 568 So. 2d at 1191.

¶27. As in *Strong*, Nassar challenges the insufficiency of the evidence to establish element (5), "want of probable cause for the proceedings."

> Here we look to the facts reasonably available to each Defendant at the time he initiated the said-to-be-malicious prosecution. *Benjamin*, 568 So. 2d at 1190; *Royal Oil*, 500 So. 2d at 443; *Owens,* 430 So. 2d at 846. Probable cause requires the concurrence of (1) a subjective element--an honest belief in the guilt of the person accused, and (2) an objective element--reasonable grounds for such beliefs. *Benjamin*, 568 So. 2d at 1190; *Royal Oil*, 500 So. 2d at 443; *Harvill v. Tabor*, 240 Miss. 750, 755, 128 So. 2d 863, 865 (1961). The question in the end is not whether the defendant thought he had probable cause, but whether the fact-finder thinks he did. *See* Holmes, *The Common Law* 140-41 (1881). Malicious prosecution probable cause analysis resembles negligence law analysis:
>
> . . . the existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. That is to say, the court will determine whether upon the appearances presented to the defendant, a reasonable person would have instituted the proceeding. W. Prosser & W. Keeton, *The Law of Torts* § 119 (5th Ed.1984).

*Strong,* 580 So. 2d at 1294 (emphasis added).

¶28. As was stated in *Strong*, "[p]robable cause requires the concurrence of (1) a subjective element--an honest belief in the guilt of the person accused, and (2) an objective element--*reasonable grounds for such beliefs*." *Id.* at 1294 (emphasis added); *Benjamin*, 568 So. 2d at 1190; *Royal Oil*, 500 So. 2d at 443. Because the facts here were undisputed, the probable cause decision was for the judge alone.[(9)] *Benjamin*, 568 So. 2d at 1190; *Owens*, 430 So. 2d at 846.

¶29. Canady testified that he honestly subjectively believed that the right person was Mike Nassar. Therefore, the linchpin issue in this case is whether or not it was objectively reasonable, the second probable cause prong, for Canady to file the criminal affidavit against Nassar given the information that he had when they were filed. *Benjamin*, 568 So. 2d at 1190; *Royal Oil*, 500 So. 2d at 443; *Owens,* 430 So. 2d at 846. The determinative query for the Court is: Was Judge Smith correct by holding that Canady acted with probable cause in filing his affidavits against Nassar in light of the facts he had available at the time the affidavits were filed. *Benjamin*, 568 So. 2d at 1190; *Royal Oil*, 500 So. 2d at 443; *Owens,* 430 So. 2d at 846.

¶30. Three people told Canady that they thought that the unknown shooter probably was Mike Nassar, but two of the three people expressed some reservations as well. Canady did not know Mike Nassar prior to filing the charges other than "seeing him around two or three times." Mike Nassar did not believe that Canady filed the charges for any malicious motive other than to do his job and to bring who he thought was a violator to justice. Canady testified that the only reason he filed the charges was to bring who he honestly thought was a criminal violator to justice. Therefore, the record does not reflect, and Nassar does not assert, that Canady pursued the charges for any reason other than to do his job by bringing who he thought was a criminal violator to justice. Thus, the trial judge is correct in his malice ruling, although the accurateness of his probable cause ruling is questionable and in conclusion incorrect. A reasonable prudent person would have investigated further given the opportunity and information Canady had available prior to filing criminal charges.

¶31. This brings the Court to the next portion of the discussion. Nassar contends that the Court created an inconsistency in our malicious prosecution case law with *Page v. Wiggins*. According to Nassar, "*Page* seems at odds with the *Royal Oil, Owens*, and *Whitfield* cases in that *Page* fails to take into account the rule that says that malice may be inferred from lack of probable cause."

¶32. This Court does not find that there is a conflict in our malicious prosecution case law. Instead, the Court finds that *Page*, although admittedly not specifically stating such, does continue to adhere to the rule that malice <u>may</u> be inferred from a lack of probable cause. The *Page* Court, while providing *Strong*, 580 So. 2d at 1293, as an example, stated that "[m]alice can be inferred from the fact that a defendant may have acted with reckless disregard for plaintiff's rights" i.e., acting without probable cause equals acting with a reckless disregard for plaintiff's rights. *Page*, 595 So. 2d at 1293. The defendants in *Strong* were found to have acted with malice because they instituted criminal proceedings to "get their stuff back," not to bring an honestly believed offender to justice.

¶33. Accordingly, this "concern" of Nassar is unwarranted as our malicious prosecution case law is consistent. Our holdings, with regard to malice and probable cause, consistently hold that probable cause is a determination of law for the judge when the facts themselves are not in dispute. Furthermore, when the facts are in dispute, the determination of probable cause is a jury question which should it find lacking, may, but is not required, to use as a basis for malice. In other words, if there is a factual dispute a jury issue is created regarding probable cause. If the jury finds probable cause lacking, it can use this as a basis for inferring malice, although not required, when determining whether or not the defendant pursued the charges for a reason other than bringing a violator to justice. Therefore, the determinative issue for the Court is whether or not Canady was reasonable[10] in his belief that Mike Nassar was the unknown shooter when Canady filed his affidavit. We find that Canady likely did not conduct an adequate investigation given the opportunity he had to readily discover additional information. Thus, Canady did not objectively have a reasonable belief of who he thought had committed the crime prior to filing the charges. The trial court in holding to the contrary erred.

## CONCLUSION

¶34. The Court is presented with a probable cause determination. Canady should have tried to locate Mike Nassar, or confirm his identity in some other way, to verify his belief prior to filing the charges. It appears that a reasonable person would have done so, given the fact that Canady visually saw the

shooter, and could have matched his personal knowledge with his subsequent identification. Coupled with the additional fact that locating Mike Nassar would have apparently not been difficult gives substantial weight to Nassar's appeal of the summary judgment granted to Concordia.

¶35. Upon remand for actual damages, the issue of punitive damages shall not be considered as the Court now renders this issue in favor of Concordia. The record, Nassar's deposition, reveals that he did not believe that Canady was filing the charges for any reason other than to fulfill his civic duty and employment obligations. Accordingly, the record does not support punitive damages. Therefore, the punitive damage request is rendered in favor of Concordia and will not be considered on remand.

¶36. **REVERSED AND REMANDED IN PART; REVERSED AND RENDERED IN PART.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. SMITH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, P.J.**


     **BANKS, JUSTICE, DISSENTING:**


¶37. This is a close case, but, given that there was a lack of probable cause, our precedents dictate that the question of malice be reserved to the jury. If the question of malice is reserved to the jury, it follows that the question of punitive damages must be likewise reserved. I cannot agree with the majority when it finds as a matter of law that Canady acted out of no motive other than to fulfill his civic duty and employment observations for purposes of punitive damages but fails to apply that same finding to the question of liability for actual damages. Either the evidence is strong enough to take the question of malice away from the jury or it is not. If it is, there is no liability. If it is not, the question of punitive as well as actual damages should be alive. *Royal Oil Co., Inc. v. Wells*, 500 So. 2d 439, 450 (Miss. 1986)("'It is firmly established doctrine in this state that punitive or exemplary damages are always properly allowed where the trespass complained of or the breach of duty committed was malicious, wanton, wilful, or capricious.' *Yazoo & M.V.R. Co. v. Williams*, 87 Miss. 344, 355, 39 So. 489, 491 (1905).")

¶38. The time may have come for us to reexamine the tort of malicious prosecution. Clearly, there are cases where acting with the want of probable cause appears to be a product of mere negligence, rather than malice in law or fact. In such cases, our precedents expose offenders to both actual and punitive damages at the jury's unguided discretion. As a result, the goal of protecting the interest of having citizens report crimes by raising the threshold of liability for a wrongful report to cases involving "malice" may be subserved. If the goal is subserved by the malicious prosecution form as applied to these situations, why hang on to the form? A cause of action for simple negligence in the institution of criminal proceedings in which actual damages could be recovered would address the problem. Alternatively, at least one court has determined that, though malicious prosecution remains the form, in the absence of malice other than that inferred from the want of probable cause, punitive

damages are not available. ***Winn-Dixie Stores, Inc. v. Gazelle***, 523 So. 2d 648 (CA Fla. 1988). In my view, this formulation makes sense. Even so, until we conduct that reexamination and change our law through a published opinion, we are duty bound to apply the law as it is.

### McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶39. Although the majority correctly finds that the circuit court erred in granting summary judgment in favor of Concordia Rod and Gun Club and in reversing and remanding for trial, I disagree with the decision to render in favor of the club on the issue of punitive damages. Accordingly, I dissent.

¶40. In its analysis of the elements of the tort of malicious prosecution, the majority focuses on the element of probable cause, sidestepping the critical "reckless disregard" aspect of the malice equation. By so doing, it mistakenly finds that the trial court was correct in determining that there was no proof of malice. We have held that malice may be inferred from the fact that the defendant may have acted with reckless disregard for the rights of another party. ***Strong v. Nicholson,*** 580 So. 2d 1288, 1293 (Miss. 1991); ***Benjamin v. Hooper Electronic Supply Co.,*** 568 So. 2d 1182, 1191 (Miss. 1990). Thus, when considering the element of malice, the jury must consider not only whether Canady had probable cause for arresting Nassar, but whether he acted in reckless disregard of Nassar's rights by arresting him before investigating more carefully the available evidence.

¶41. Absent a determination of whether Canady acted with reckless disregard of Nassar's rights, it is premature to render the punitive damages issue in favor of the gun club. Whether punitive damages are appropriate in this case, like the factual questions to be resolved regarding the malicious charge, is within the province of the jury. Therefore, I disagree with the decision to take the issue of punitive damages away from the jury. Accordingly, I dissent.

### SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶42. I agree with the majority on all issues except for the lone issue of whether or not the granting of summary judgment was proper as a matter of law concerning the failure of Nassar to prove the necessary elemen t of malice to satisfy the precedential requirement that Nassar must meet all six elements required for the tort of malicious prosecution. The denial by the trial court of punitive damages under the facts of this case and this Court's reversal and rendering on this issue is absolutely required.

¶43. This Court's precedent is well-developed and requires that a plaintiff must meet all six elements to prove malicious prosecution. ***Benjamin v. Hooper Elec. Supply Co., Inc.***, 568 So. 2d 1182, 1188 (Miss. 1990); ***Parker v. Mississippi Game and Fish Comm'n***, 555 So. 2d 725, 728 (Miss. 1989); ***Royal Oil Co., Inc. v. Wells***, 500 So. 2d 439, 442 (Miss. 1986); ***Woolfolk v. Tucker***, 485 So. 2d 1039, 1043 (Miss. 1986); ***Owens v. Kroger Co.***, 430 So. 2d 843, 846 (Miss. 1983); ***Gandy v. Palmer***, 251 Miss. 398, 414, 169 So. 2d 819, 826 (1964).

¶44. Nassar was thus required to produce evidence on each of the six listed elements. In my view, Nassar wholly failed to produce any evidence whatsoever regarding malice by Bobby Canady in his mistaken filing of criminal charges against Nassar. The Court must examine Canady's subjective state

of mind, in order to determine if malice in fact was present when the filing of the charges occurred. This Court, in *Page v. Wiggins*, 595 So. 2d 1291, 1293 (Miss. 1992), stated "[m]alice is used in an artificial and legal sense and applies to prosecutions initiated primarily for the purposes other than that of bringing an offender to justice." Here, however, there is no evidence to show that Canady acted with any other motive except as a law abiding citizen attempting to see that violators shooting game from the levee were prosecuted. "A citizen has a privilege to start the criminal law into action by complaints to the proper officials so long as one acts either in good faith, i.e., for a legitimate purpose, or with reasonable grounds to believe that the persons proceeded against may be guilty of the offense charged." Prosser & Keeton, <u>The Law of Torts</u>, § 4.1 at 406-07 (2nd Ed. 1986). This Court, in *Benjamin*, *supra,* 568 So. 2d at 1182, stated, "[t]he law allows wide latitude for honest action on the part of a citizen who purports to assist public officials in their task of law enforcement." *Id*. at 1187. Additionally, the *Owens* Court noted that public policy interest in crime prevention insists that private citizens, when aiding law enforcement personnel, ought to be protected against the prejudice that is likely to arise from the termination of the prosecution in favor of the accused. *Owens*, 430 So. 2d at 846.

¶45. The ultimate question in the case *sub judice* turns on what evidence, if any, exists that Canady was acting with malice at all times. The *Owens* Court held that malice, although normally a question of fact and determined by the jury, may also be a question of law when only one conclusion may be reasonably drawn from the evidence. *Id.* at 848. Malice, "refers to the **defendant's objective**, not his attitude." *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991) (emphasis added).

¶46. What in fact was Canady's objective or purpose in stopping the vehicle occupied by two individuals who were shooting at wildlife from the levee on December 1, 1989, and his subsequent filing of the affidavit against Nassar three days later on December 4? This record reflects no other reason for bringing Nassar, one of the individuals that Canady reasonably and legitimately thought was responsible for the offense, before a court of law, other than for a determination of his guilt or innocence of the offense charged. This was unequivocally Canady's response in his deposition upon repeated questioning. Nassar has offered no proof to the contrary. Nassar admitted that Canady neither knew him nor had ever been acquainted with him prior to the incident in question. However, more importantly, in his deposition, Nassar also admitted that he **did not believe that Canady acted with malice**, and did not believe Canady had any ill will toward him. Canady's version is thus uncontradicted. Thus, only one conclusion may be drawn; that Canady clearly acted in good faith and had a reasonable belief that Nassar was the person he observed in the stopped vehicle who had refused to reveal his identity to him. Nassar, failed to prove malice by Canady, thus, the trial court's ruling was correct.

¶47. I respectfully concur in part and dissent in part.

**PRATHER, P.J., JOINS THIS OPINION.**


1. *See Benjamin v. Hooper Electronic Supply Co.,* 568 So. 2d 1182, 1191 (Miss. 1990). *Cf. Wainauskis v. Howard Johnson Co.,* 488 A.2d 1117, 1123 (Pa. 1985) ("[P]robable cause must not be based upon an inadequate and unreasonable investigation of the circumstances concerning the alleged criminal conduct."). *See also Harris v. Lewis State Bank*, 482 So. 2d 1378, 1382 (Fla. Dist. Ct. App. 1986) ("[W]here it would appear to a 'cautious man' that further investigation is justified

before instituting a proceeding liability may attach for failure to do so <u>especially where the information is readily obtainable</u>.")(emphasis added).

2. "When the facts are undisputed, it is the function of the court to determine whether or not probable cause existed. If the facts are in dispute, under our decisions it is a jury question, based upon proper instructions, to determine whether or not probable cause existed." ***Owens v. Kroger***, 430 So. 2d 843, 846 (Miss. 1983); ***Benjamin v. Hooper Electric Supply Co.***, 568 So. 2d 1182, 1190 (Miss. 1990).

3. This assumption is based on the fact that Canady's half-brother and the conservation officer were familiar with Mike as they had past dealings with him and knew that he was part of the Nassar family of Shelby, Mississippi.

4. The Court stated in ***Strong v. Nicholson***, 580 So. 2d 1288 (Miss. 1991), that:

> <u>Malice does not refer to mean or evil intent</u>, as a layman might ordinarily think. Rather, malice in the law of malicious prosecution is a term used in an artificial and legal sense. It <u>connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice</u>. ***Benjamin v. Hooper Electronic Supply Co.,*** 568 So. 2d at 1191; ***Royal Oil Co., Inc. v. Wells,*** 500 So. 2d at 444; ***Owens v. Kroger Co.,*** 430 So. 2d at 847; ***State Life Insurance Co. of Indianapolis v. Hardy***, 189 Miss. 266, 277, 195 So. 708, 713 (1940). As such, it refers to the defendant's objective, not his attitude. Malice may be and usually is shown by circumstantial evidence. The jury may infer malice from the facts of the case. ***Benjamin***, 568 So. 2d at 1191; ***Royal Oil***, 500 So. 2d at 444; ***Owens,*** 430 So. 2d at 847. Malice may be inferred as well from the fact that a defendant may have acted with reckless disregard for the plaintiff's rights. ***Strong,*** 580 So. 2d at 1293; ***Benjamin***, 568 So. 2d at 1191.

5. At the time of the incident, Canady was employed by Concordia to patrol its hunting property for trespassers and poachers.

6. The record does not reflect Canady attempted to subsequently find Mike Nassar in person to verify if he was the other person.

7. Red Yarborough was not deposed and never filed any statement about his involvement in this case.

8. Mike Nassar supplemented discovery in this case to include an affidavit along with photographs taken over the past several years to illustrate that he normally wore a beard.

9. There is a dispute over the reasonableness of Canady's inquiry prior to filing the charges, but there is not a factual dispute over who said and did what in this case.

10. Nassar contends that because the second prong of the probable cause test is a reasonableness test that it should always be a jury question making summary judgment improper. However, this argument is contrary to our long adhered reasoning and holding of ***Whitfield v. Westbrook***, 40 Miss. 311, 317 (1866).